IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,610

STATE OF KANSAS,
*Appellee*,

v.

RILEY D. MOORE,
*Appellant.*

SYLLABUS BY THE COURT

1.

To prove aggravated kidnapping under K.S.A. 21-5408(b), the State must demonstrate bodily harm was inflicted upon the person kidnapped. The term "bodily harm" is readily understandable and requires no instructional definition.

2.

Unpreserved instructional issues that are not clearly erroneous may not be aggregated in a cumulative error analysis because K.S.A. 22-3414(3) limits a party's ability to claim them as error.

Review of the judgment of the Court of Appeals in an unpublished opinion filed June 16, 2023. Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Oral argument held March 27, 2024. Opinion filed September 27, 2024. Judgment of the Court of Appeals affirming in part and reversing in part the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, *Derek Schmidt*, former attorney general, and *Kris W. Kobach*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

BILES, J.: Both parties seek our review of a Court of Appeals decision reversing Riley D. Moore's aggravated kidnapping conviction after the panel determined the cumulative prejudicial impact of two unpreserved jury instruction errors denied him a fair trial. See *State v. Moore*, No. 124,610, 2023 WL 4065032, at *1 (Kan. App. 2023) (unpublished opinion). The State faults the panel for not considering each error's prejudicial effect separately before analyzing the cumulative effect. We agree. The panel needed to consider whether each unpreserved instructional issue constituted clear error before moving to combine them. See *State v. Waldschmidt*, 318 Kan. 633, Syl. ¶ 9, 546 P.3d 716 (2024) ("Unpreserved instructional issues that are not clearly erroneous may not be aggregated in a cumulative error analysis because K.S.A. 2022 Supp. 22-3414[3] limits a party's ability to claim them as error."). The panel skipped this threshold step.

We also hold neither instructional issue is clearly erroneous. See *State v. Martinez*, 317 Kan. 151, 162, 527 P.3d 531 (2023) (to determine clear error, a reviewing court must be firmly convinced the jury would have reached a different verdict had the issue not occurred). This means the panel mistakenly included them in a cumulative error analysis, although we acknowledge it did not have *Waldschmidt*'s guidance. Even so, the panel erred in its analytical approach, and we overturn the reversal of Moore's conviction.

In his disagreements with the panel, Moore claims the evidence cannot support the aggravated kidnapping conviction and the panel should have reversed for that reason. He also urges us to decide an issue the panel avoided—whether the district court's non-PIK instruction, defining aggravated kidnapping's taking-or-confining element, was factually and legally appropriate. We reject all his arguments on the merits.

We reinstate Moore's aggravated kidnapping conviction and affirm the district court's judgment on the issues subject to review.

FACTUAL AND PROCEDURAL BACKGROUND

As a post-breakup conversation deteriorated into violence, Moore dragged M.M. into a garage, closed the door, ripped the door opener off the wall, and prevented her from leaving. She managed to escape, but he followed her, and a physical altercation ensued near the street. She suffered abrasions to her side, pain, and tears to her clothing. The State brought multiple charges against Moore. A jury found him guilty of aggravated kidnapping, criminal threat, and domestic battery; it also determined each crime was an act of domestic violence. The district court ordered him to serve a 123-month prison sentence.

Moore appealed the aggravated kidnapping conviction, arguing insufficient evidence of bodily harm. He also claimed instructional errors denied him a fair trial. The panel rejected the first argument but reversed the conviction after mostly agreeing with the second claim. *Moore*, 2023 WL 4065032, at *7, 10. In so holding, it avoided deciding his contention that the district court improperly deviated from the PIK instructions to define aggravated kidnapping's taking-or-confining element over his objection.

The State petitioned for review of the panel's cumulative error analysis. Moore cross-petitioned its sufficiency determination and conditionally cross-petitioned on the

3

non-PIK instruction. We granted review on all issues. Jurisdiction is proper. K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

## SUFFICIENT EVIDENCE OF BODILY HARM

We start with the sufficiency question because if we agree with Moore, it requires his conviction's reversal no matter what we think about the panel's cumulative error analysis. See *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018) (noting if evidence from the first trial is insufficient to support conviction, retrying a defendant on the same charges would violate double jeopardy protections). As explained, we hold sufficient evidence supports the verdict.

### *Additional facts*

Moore got "heated" during a post-breakup conversation, so M.M. briefly left her home to avoid arguing. She returned when his car was gone, but he came back and became threatening. She went outside, and Moore followed. He made physical contact she described as "being tackled."

He grabbed M.M.'s upper shoulder and arm and dragged her into the home's attached garage, causing abrasions to her sides and tears to her outer coat. He shut the overhead garage door. When she tried to keep it open, he shut it again. M.M. did not feel free to leave. Sometime during the altercation, Moore pulled the garage door opener off the wall. The garage has "four doors, two overhead, one that connects to the interior of the home and one that exits into the back yard." A piece of wood used as a locking device blocked the backyard door. The arguing continued.

4

At some point M.M. secretly dialed 911, resulting in a six minute and 14 second recording of what Moore said. While M.M. cried, he can be heard yelling:

"You're gonna die tonight. You ready?

. . . .

"If you don't talk to me, we're both gonna die.

. . . .

"Fuck you. I'm burning this whole house down tonight.

. . . .

"Either you talk to me and you die and I die, or it's just me dying.

. . . .

"Stop! Please! This is what I don't want! Don't do this! Please . . . just want you to talk to me! Please! You can walk away from me right now and just know that I'm going to be here dead. Ok, this will be the last time you talk to me."

M.M. asked to step outside, but Moore blocked her and pulled her back into the garage. Eventually, he let her out the door to the backyard, lifting the wooden barricade. She "tiptoe[d], being watchful of where he's at," trying to ensure he did not follow her. But he did through a different exit. She tried to get in her vehicle and lock the doors, but he jumped into the passenger seat first. She got out and ran across the yard towards the roadway. He chased after her, and another physical altercation ensued near the street. He grabbed her by the arms of her two coats and ripped the coats off, causing her pain.

5

An off-duty officer saw the confrontation and observed that as M.M. stood up and attempted to get away from Moore, he tried to shove her towards the street. The officer who took her report described her as "extremely distraught, very upset, she seem[ed] terrified." Her voice shook, and she sounded out of breath.

M.M.'s version of events softened at both the preliminary hearing and the trial. She thought the charges were too severe, and Moore's mother asked her to call the prosecutor's office to drop the charges. Before the jury, she testified Moore was a good person at heart and she still loved him.

When it came time to instruct the jury, the district court's aggravated kidnapping instruction stated:

"The defendant is charged with aggravated kidnapping. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved:

"1.  The defendant took or confined [M.M.] by force;

"2.  The defendant did so with the intent to terrorize [M.M.];

"3.  Bodily harm was inflicted on [M.M.];

"4.  The act occurred on or about the 22nd day of January, 2021, in Sedgwick County, Kansas."

It did not define "bodily harm."

*Standard of review*

When a defendant challenges the evidence's sufficiency, an appellate court reviews the trial evidence in the light most favorable to the prosecution and decides

whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Butler*, 317 Kan. 605, 608, 533 P.3d 1022 (2023). Here, we must also review applicable statutes. Statutory interpretation is a question of law, so our review is unlimited. *State v. Hambright*, 310 Kan. 408, 412, 447 P.3d 972 (2019).

*Discussion*

The panel held the evidence sufficiently showed bodily harm to sustain Moore's aggravated kidnapping conviction. *Moore*, 2023 WL 4065032, at *7. Moore attacks that view in two ways. First, he contends the panel improperly allowed the State to rely on both the dragging and the streetside altercation to establish bodily harm even though the latter was not part of the State's theory in the district court. Second, he argues the evidence fails to support the bodily harm element as a matter of law because our caselaw excludes trivial injuries likely to result from a simple kidnapping. We agree with the panel that the evidence sufficiently supports this conviction.

As to his first claim, Moore alleges the State's appellate argument should be confined to its trial theory that he says relied on M.M.'s abrasions from being dragged into the garage to establish bodily harm. He argues the State focused only on those abrasions to avoid a potential multiple acts problem by excluding the streetside clash, which he sees as a separate act.

To start, we reject his assumption that this is a multiple acts case. Incidents are factually separate when independent criminal acts occur at different times or when a fresh impulse motivates a later criminal act. *State v. Kesselring*, 279 Kan. 671, 683, 112 P.3d 175 (2005). In *Kesselring*, the court determined a kidnapping victim's momentary freedom after jumping out of the kidnapper's car did not create a multiple acts case because there was no new criminal impulse and the kidnapper's companion quickly

7

returned the victim to the car. 279 Kan. at 682-83. The *Moore* panel correctly applied *Kesselring* to hold the incident here involved a continuous act, not separate ones. It explained:

> "The facts viewed favorably to the State show that Moore took the victim to the garage and a short time later, with no meaningful passage of time or fresh impulse by Moore, then grabbed her when she was near the street. These two acts—taking the victim to the garage and trying to stop her from leaving—occurred close in time, close in location, and were both motivated by Moore's desire to talk to the victim about their relationship. Moore acted with the same impulse when he took the victim to the garage as when he tried to stop her by the street after she left the garage—and those were not separate criminal acts." *Moore*, 2023 WL 4065032, at *6.

Next, Moore incorrectly frames this as a restriction on the State's appellate theory when the issue is sufficiency. The question before us is whether any evidence presented to the jury demonstrated bodily harm when viewed in the light most favorable to the State. See *State v. Pepper*, 317 Kan. 770, 777, 539 P.3d 203 (2023) (providing evidence sufficiency only determines whether the evidence was strong enough to reach a jury by asking if a rational trier of fact could find the crime's essential elements beyond a reasonable doubt). At trial, the State introduced evidence of both "parts" of the incident and discussed them during closing arguments, even though it emphasized the dragging abrasions heavily. We consider all the evidence, including the streetside altercation, just as the jury did. Moore cannot cherry-pick the State's closing arguments to limit the sufficiency analysis on appeal.

### *Is there sufficient evidence of bodily harm?*

Aggravated kidnapping is "the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person . . . to inflict bodily injury or to terrorize the victim . . . *when bodily harm is inflicted upon the person kidnapped*."

(Emphasis added.) K.S.A. 21-5408(a)(3) and (b). Moore argues M.M. only suffered trivial minor abrasions that cannot support bodily harm as a matter of law. Again, we disagree.

We begin by considering what the statute means by "bodily harm." See *State v. Boyer*, 289 Kan. 108, 109, 209 P.3d 705 (2009) ("Any analysis of a statute must start with the language of the statute itself."). The Kansas Criminal Code does not explicitly define the term, but its meaning is not so difficult to understand. Black's Law Dictionary defines bodily harm as "[p]hysical pain, illness, or impairment of the body." Black's Law Dictionary 861 (11th ed. 2019). And Merriam-Webster defines it as "any damage to a person's physical condition including pain or illness." Merriam-Webster Online Dictionary (defining bodily harm as bodily injury).

But instead of interpreting the statute based on its ordinary and common meaning, Moore urges us to apply the definition established by our precedent. In *State v. Brown*, 181 Kan. 375, 389, 312 P.2d 832 (1957), the court relied on legislative history and stated: "[A]ny touching of a victim against her will, with physical force, in an intentional, hostile and aggravated manner, or the projecting of such force against the victim by the kidnaper is 'bodily harm' within the meaning of the statute providing the death penalty if the person kidnaped suffered bodily harm." It reached that understanding by borrowing California law's definition because our Legislature had similarly strengthened the penalty for kidnapping causing bodily harm "as a result of an aroused public feeling." 181 Kan. at 386, 388-89.

Nearly 20 years later, *State v. Taylor*, 217 Kan. 706, 538 P.2d 1375 (1975), narrowed *Brown*'s definition to match California law's trivial injuries exclusion. The *Taylor* court explained:

9

"[California] now recognizes that some 'trivial' injuries are likely to result from any forcible kidnapping by the very nature of the act. It concludes that insignificant bruises or impressions resulting from the act itself are not what the legislature had in mind when it made 'bodily harm' the factor which subjects one kidnapper to a more severe penalty than another. A significant policy reason for making the distinction is to deter a kidnapper from inflicting harm upon his victim, and to encourage the victim's release unharmed. It was, in that court's view, *only unnecessary acts of violence upon the victim, and those occurring after the initial abduction which the legislature was attempting to deter. Therefore, only injuries resulting from such acts would constitute 'bodily harm.'*" (Emphasis added.) 217 Kan. at 714.

The court then determined "[t]his refinement . . . fits within the limits of our own prior cases" and recognized rape in *Brown* was bodily harm as an unnecessary, violent act not part of the kidnapping. 217 Kan. at 714. Applying this definition, it held throwing a child unable to swim into a river was bodily harm because it was intentional, hostile, and aggravated force applied outside a forcible kidnapping's scope. 217 Kan. at 714-15.

The most commonly cited case now defining bodily harm is *Royal*, although it just restates *Brown*'s general definition with *Taylor*'s trivial injuries exclusion. The Comment to PIK Crim. 4th 54.220 advises:

"In *Royal*, the Supreme Court, relying on California cases noted a definition of 'bodily harm' to be 'any touching of the victim against the victim's will; with physical force, in an intentional, hostile and aggravated manner, or the projecting of such force against the victim by the kidnapper not including trivial injuries likely to result from any forcible kidnapping by the very nature of the act.' [Citation omitted.]"

The *Royal* court addressed two separate instructional issues for aggravated kidnapping. First, it considered the district court's failure to instruct on simple kidnapping as a lesser included offense. It carefully distinguished the case's facts, in which the

10

defendant cut the victim with a knife, from a California case excluding minor cuts from an escape attempt: a scraped knee, nosebleeds, fainting, and stomach distress from bodily harm. *Royal*, 234 Kan. at 222 (citing *People v. Schoenfeld*, 111 Cal. App. 3d 671, 168 Cal. Rptr. 762 [1980]). Second, it examined the district court's failure to define bodily harm and held the omission was not error because "[t]he term is readily understandable and no instructional definition is . . . necessary," especially when bodily harm was uncontested. 234 Kan. at 223.

One may quibble whether our caselaw ignores the statute's plain meaning, but that is of little concern under the facts of Moore's case. We view the evidence in the light most favorable to the prosecution and hold a reasonable jury could find he caused M.M. bodily harm. There is no factual dispute she had physical injuries—she suffered abrasions and felt pain when Moore dragged her about 25 feet across pavement and grabbed her near the street. We hold sufficient evidence supports this aggravated kidnapping conviction.

THE PRESERVED JURY INSTRUCTION ISSUE

We turn next to Moore's jury instruction challenge not addressed by the panel. He notes Instruction No. 7—providing the caselaw definition of the taking-or-confinement element—was not a standard pattern instruction and was given over his objection. He argues the definition's addition was both legally and factually inappropriate. He claims it "watered down" the element's meaning. The challenged instruction provided:

> "The 'taking or confinement' requires no particular distance or removal, nor any particular time or place of confinement. It is the taking or confinement that supplies the necessary element of kidnapping."

11

*Standard of review*

Our review is unlimited in deciding whether the complained-of instruction is legally appropriate. We determine whether the instruction was factually appropriate by viewing the evidence in the light most favorable to the requesting party, i.e., the prosecution. Upon a finding of error, we consider whether that error was harmless, using the degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011). *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012).

*Discussion*

We begin with *State v. Buggs*, 219 Kan. 203, 547 P.2d 720 (1976), because the record reflects its definition prompted the district court to give the challenged instruction. There, the defendants argued their conduct did not meet kidnapping's taking-or-confining element because their movement and confinement of the victims was minor and inconsequential. The court ultimately held their actions met the element because the statute requires "no particular distance of removal, nor any particular time or place of confinement. Under our present statute it is still the fact, not the distance, of a taking (or the fact, not the time or place, of confinement) that supplies a necessary element of kidnapping." 219 Kan. at 214.

In *State v. Smith*, 232 Kan. 284, 654 P.2d 929 (1982), the court weighed in on the same issue raised by Moore and upheld the instruction based on *Buggs*. In *Smith*, the defendant forced the victim to walk from her second-floor bedroom downstairs to his car, but she escaped before getting into the vehicle. As with Moore's taking-or-confining instruction, the *Smith* instruction stated:

> "'In connection with the charge of Kidnapping, you are instructed that no particular
> distance of removal is required, nor any particular time or place of confinement. Under

our law, it is the fact, not the distance of the taking, and the fact, not the time or place of confinement, that supplies the necessary element of Kidnapping.'" 232 Kan. at 290.

The *Smith* court concluded the challenged instruction was legally appropriate. 232 Kan. at 290. Likewise, the instruction Moore objected to is legally valid because it fairly and accurately states the law from *Buggs*. See *State v. Strong*, 317 Kan. 197, Syl. ¶ 1, 527 P.3d 548 (2023) (jury instructions are legally appropriate when they fairly and accurately state the applicable law).

*Buggs* defined "taking or confining" through statutory interpretation. See *State v. Fredrick*, 292 Kan. 169, 175, 251 P.3d 48 (2011) (when interpreting statutes, courts determine the meaning of plain and unambiguous language and do not read something into the statute that is not readily found in it). This definition of K.S.A. 21-5408(a)'s language remains binding precedent, even if *Buggs* incorrectly decided the separate point of law in defining "facilitate" under subsection (a)(2). See *State v. Butler*, 317 Kan. 605, 612, 533 P.3d 1022 (2023) ("[W]e do not lightly disapprove of precedent. Our court decided *Buggs* nearly five decades ago. And under the principle of stare decisis, unless clearly convinced otherwise, '"points of law established by a court are generally followed by the same court . . . in later cases"' to promote stability in the legal system. [Citations omitted.] The continuing validity of *Buggs* is not an issue briefed by the parties. Nor did we agree to consider it when we granted review. And perhaps most importantly, we need not revisit *Buggs* to resolve this appeal. So we save that question for another day."); *State v. Couch*, 317 Kan. 566, 600, 533 P.3d 630 (2023) (Stegall, J., dissenting) (criticizing *Buggs*' definition of "facilitate" for the court's failure to conduct a plain language analysis before considering other sources).

And a trial court may modify PIK instructions as the facts require. *State v. Bernhardt*, 304 Kan. 460, 470-72, 372 P.3d 1161 (2016). The deviation from the PIK was warranted because Moore only moved M.M. about 25 feet to the garage. Confinement

13

was also at issue, and the jury even asked, "Can we hear [the responding officer's] statement regarding the description of back door upon arrival." Further, although the exact duration was unclear, the incident occurred briefly. The 911 call lasted just six minutes and 14 seconds.

Moore argues the given instruction risks misleading the jury because it must determine whether the State proved each element beyond a reasonable doubt, not whether the State presented minimally sufficient evidence. But his argument is nonsensical because a reasonable doubt standard has nothing to do with a jury instruction's factual appropriateness. See *Plummer*, 295 Kan. 156, Syl. ¶ 1.

Moore cites several cases as support, but none are persuasive. Both *State v. Nelson*, 223 Kan. 572, 574, 575 P.2d 547 (1978), and *State v. McKessor*, 246 Kan. 1, 10-11, 785 P.2d 1332 (1990), affirmed the district court declining to use *Buggs* to define taking or confining another *to facilitate the commission of another crime*. These cases pertain to facilitation under K.S.A. 21-5408(a)(2), not to terrorizing the victim under (a)(3). For that same reason, *State v. Brooks*, 222 Kan. 432, 435, 565 P.2d 241 (1977), is inapplicable although it considers evidence sufficiency, not jury instructions. Finally, Moore points to some California decisions, noting *Buggs* (and Kansas caselaw on kidnapping generally) favorably cites such cases. But *Buggs* declined to follow California law in defining taking or confining. 219 Kan. at 209-16.

An instruction is factually appropriate when sufficient evidence, viewed in the light most favorable to the requesting party, supports that instruction. *State v. Stafford*, 312 Kan. 577, 581, 477 P.3d 1027 (2020). Here, the State presented evidence Moore dragged M.M. into the garage (taking) and prevented her from leaving for a short time (confinement). Although Moore points to a jury question about the condition of the door M.M. eventually escaped through, the evidence still shows he took and confined the victim when viewed in the light most favorable to the State.

14

We hold the district court did not err in giving the non-PIK instruction over Moore's objection as it defined taking or confining properly under Kansas law and was factually appropriate.

THE UNPRESERVED JURY INSTRUCTION ISSUES

Turning to the State's issue on review, it argues the panel improperly aggregated two unpreserved jury instruction issues without first finding clear error and then wrongly concluded their cumulative effect denied Moore a fair trial. We agree with the State, although our rationale relies on *State v. Waldschmidt*, 318 Kan. 633, Syl. ¶ 9, 546 P.3d 716 (2024), released after the panel decided Moore's appeal.

*Additional facts*

Moore claimed for the first time on appeal the district court failed to instruct on bodily harm's definition and omitted specific intent to hold the victim from the instruction. For convenience, recall the instruction stated:

> "The defendant is charged with aggravated kidnapping. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved:
>
> "1.  The defendant took or confined [M.M.] by force;
> "2.   The defendant did so with the intent to terrorize [M.M.];
> "3.  Bodily harm was inflicted on [M.M.];
> "4.  The act occurred on or about the 22nd day of January, 2021, in Sedgwick County, Kansas."

All agree this instruction does not define bodily harm and is missing language from the pattern instructions. Moore correctly notes the second element should have stated:  "The defendant did so with the intent *to hold* [M.M.] . . . to terrorize [M.M.]."

15

(Emphasis added.) See PIK Crim. 4th 54.220 (2019 Supp.). But at trial he did not object to the given instruction.

The panel agreed with Moore on both points. *Moore*, 2023 WL 4065032, at *8-9. But it did not decide whether either issue amounted to clear error before moving into its cumulative error analysis. The panel merely held the "two errors are so related and entwined as to create substantial prejudice to Moore and deny him a fair trial." 2023 WL 4065032, at *10.

Before oral argument, we ordered the parties to be prepared to discuss whether unpreserved instructional issues that are not clearly erroneous can be included in a cumulative error analysis under K.S.A. 22-3414(3). Shortly after argument, we released our decision in *Waldschmidt*, and the State filed a notice of additional authority asking us to apply *Waldschmidt*. See Supreme Court Rule 6.09(a)(2) (2024 Kan. S. Ct. R. at 40). Moore responded, acknowledging *Waldschmidt* impacts our analysis.

*Discussion*

The panel failed to consider whether each unpreserved instructional issue was clearly erroneous. K.S.A. 22-3414(3) expressly states, "No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires . . . *unless the instruction or the failure to give an instruction is clearly erroneous*." (Emphasis added.) This means a party may not claim an unpreserved issue as error without a clear error determination. *Waldschmidt*, 318 Kan. at 659-63. Even so, the panel's analytical approach was wide of the mark regardless of *Waldschmidt* when it incorrectly described its review standard as:

> "This court will find clear error only when it is firmly convinced the jury would have reached a different verdict absent the erroneous instruction. *Crosby*, 312 Kan. at 639.

16

However, when the court finds multiple errors that cumulatively affect the trial—even when none of the errors alone constitute clear error—the standard for reversal changes. In the case of multiple, cumulative errors, this court must determine 'whether the totality of the circumstances substantially prejudiced the defendant and denied that defendant a fair trial.' See *Taylor*, 314 Kan. at 173 (finding cumulative error where five errors were identified, requiring reversal)." *Moore*, 2023 WL 4065032, at *10.

In citing *State v. Taylor*, 314 Kan. 166, 496 P.3d 526 (2021), which did not include an instructions challenge, and conducting its analysis as it did without considering each error's individual impact, the panel failed to appreciate its errors involved unpreserved instructional issues subject to K.S.A. 22-3414(3).

### *Failure to define bodily harm*

At trial, Moore did not request the definition instruction. On review, the State does not challenge the panel's holding that the instruction should have been given, so the remaining question is whether the failure to define bodily harm was clear error. See *State v. Jarmon*, 308 Kan. 241, Syl. ¶ 1, 419 P.3d 591 (2018) ("When an instructional error was not raised in the district court and is asserted for the first time on appeal, failing to give a legally and factually appropriate instruction will result in reversal only if the failure was clearly erroneous."). Clear error exists when the court is firmly convinced the outcome would have been different had the instruction been given. Moore bears the burden to establish that, and this court's review is de novo based on the entire record. See *State v. Bentley*, 317 Kan. 222, 242, 526 P.3d 1060 (2023).

Relying on his sufficiency argument, Moore believes a properly instructed jury would have acquitted him of aggravated kidnapping because bodily harm requires more than trivial injuries. But we already concluded sufficient evidence supports the bodily harm element because Moore dragged M.M. across the pavement, scraping her sides, and

grabbed her near the street, causing her pain. Given that, we are not firmly convinced the outcome would have been different.

### *The omitted specific-intent-to-hold instruction*

Similarly, we need only resolve whether the district court clearly erred in omitting the specific-intent-to-hold element because Moore did not request it at trial and the State does not contest that the missing language should have been given. See *Jarmon*, 308 Kan. 241, Syl. ¶ 1.

Moore begins by asking us to adopt a more stringent constitutional harmless error standard from *State v. Richardson*, 290 Kan. 176, 224 P.3d 553 (2010) (adopting *Neder v. United States*, 527 U.S. 1, 9-10, 119 S. Ct. 1827, 144 L. Ed. 2d 35 [1999]), instead of the clear error framework in *Jarmon*, 308 Kan. at 244 (providing clear error "applies with equal force when the defendant fails to object to an instruction that omits an element of a crime"). He argues *Jarmon* did not overrule *Richardson*. But we reject his suggestion. For one, this court updated its standard of review for jury instruction issues in *Plummer*, 295 Kan. 156, Syl. ¶ 1, well after *Richardson*. For another, the *Jarmon* court implicitly addressed *Richardson* when it found the clear error framework adheres to *Neder*. See *Jarmon*, 308 Kan. at 244; *Richardson*, 290 Kan. at 182-83 (adopting *Neder*'s framework). We hold clear error analysis remains the standard. See *State v. Jones*, 313 Kan. 917, 927, 492 P.3d 433 (2021) ("In the absence of a contemporaneous objection, the failure to include an essential element of the crime in jury instructions is still reviewed for clear error.").

Moving on to apply the clear error standard, Moore's bare assertion is that "[M.M.] testified that [Moore] never stopped her from leaving the garage." But that ignores how he dragged her into the garage, immediately closed the door, and prevented her from reopening it. And she told officers she did not feel free to leave. She testified otherwise

18

only after discovering the charges and their severity. This evidence does not firmly convince us the jury would have issued a different verdict had a complete instruction been given.

*Cumulative error analysis by the panel*

Interpreting K.S.A. 22-3414(3), the *Waldschmidt* court concluded that "[n]o party may claim as error the giving or failing to give an instruction unless (1) that party objects by stating a specific ground or (2) the instruction or failure to give an instruction is clearly erroneous." *Waldschmidt,* 318 Kan. at 660. Accordingly, "[w]hen no clear error occurs with an unpreserved instructional issue, there is no error to aggregate." 318 Kan. at 661. Since neither unpreserved instructional issue meets the clear error standard, the statute provides Moore cannot claim them as error in a cumulative error analysis. The panel erred by considering them as it did.

Judgment of the Court of Appeals affirming in part and reversing in part the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed.

* * *

STEGALL, J., concurring:  I concur in the result. I cannot join the majority opinion because it cites and relies on the statutory analysis contained in our flawed *Buggs* decision. *State v. Buggs*, 219 Kan. 203, 215, 547 P.2d 720 (1976). As I have previously argued, *Buggs* should be overruled. *State v. Couch*, 317 Kan. 566, 604, 533 P.3d 630 (2023) (Stegall, J., dissenting).

LUCKERT, C.J., joins the foregoing concurring opinion.