NOT DESIGNATED FOR PUBLICATION

No. 126,825

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SCOTT D. BROCKMAN,
*Appellant*.


MEMORANDUM OPINION

Appeal from Jackson District Court; CHRISTOPHER ETZEL, judge. Oral argument held July 8, 2025. Opinion filed August 8, 2025. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, principal assistant solicitor general, *Ethan Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.


Before WARNER, C.J., BRUNS and BOLTON FLEMING, JJ.


PER CURIAM: Scott D. Brockman appeals after a jury convicted him of possession of methamphetamine and possession of drug paraphernalia. The sole issue raised on appeal is whether the State presented sufficient evidence at trial to prove that Brockman possessed the baggie containing the methamphetamine found on the ground where he had been standing while interacting with sheriff's deputies on the night of his arrest. Viewing the evidence in the light most favorable to the State—including any reasonable inferences that could be drawn from such evidence—we find that there is sufficient evidence in the record to support the jury's verdict. Thus, we affirm.

1

FACTS

On the night of October 15, 2021, Brockman's aunt—who he referred to as his "mother"—called the Jackson County Sheriff's Department to report that she was frightened by someone knocking on her door. Sheriff's Deputy Michael Klenk was dispatched to the aunt's home and saw a man standing beside a pickup truck. The deputy recognized the man as Brockman based on previous encounters with him and his aunt. Deputy Klenk informed Brockman that his aunt had reported a disturbance and that he needed to stay near him until it could be determined whether he had permission to be on the property.

While Deputy Klenk was speaking with the aunt at her doorway, Brockman walked away toward his pickup truck. He also walked toward his aunt's car and positioned himself on the opposite side of the car from where the deputy was standing. Because Brockman was acting erratically—throwing his hands in the air—the deputy instructed him to stand still with his hands on his aunt's car. Although Brockman initially complied, he continued to put his hands into his pockets.

Because Deputy Klenk had safety concerns based on Brockman's actions and his failure to comply with his instructions, he called for assistance. When Sergeant Cory Lusk arrived on the scene, Brockman immediately moved toward him with his hands up. While Sergeant Lusk was speaking with Brockman, Deputy Klenk spoke with the aunt, who informed him that Brockman had her permission to be on the property.

As the deputies prepared to leave and Brockman headed toward his pickup truck, Sergeant Lusk noticed a baggie on the ground where Brockman had been standing with his hands resting on the aunt's car. Although the baggie was found in plain sight, it was partially covered with gravel and dirt. Because the deputies believed that the baggie

2

contained what appeared to be methamphetamine, they showed it to Brockman, and he claimed that he had never seen it before.

The deputies then reviewed dash cam footage from Deputy Klenk's patrol vehicle that had been facing where Brockman was standing next to his aunt's car. The video shows Brockman reaching his hand into his pocket, pulling his hand out, and moving his foot around on the ground where the baggie was found. As a result, the deputies arrested Brockman, and the State charged him with possession of methamphetamine and possession of drug paraphernalia.

The district court held a one-day jury trial on May 3, 2023. At trial, the State presented the testimony of both Deputy Klenk and Sergeant Lusk regarding the events on the night of Brockman's arrest. In addition, the State introduced videos from Klenk's dash and body cameras. The videos were admitted into evidence and shown to the jury. The State also presented the testimony of a forensic scientist from the Kansas Bureau of Investigation who reported that the baggie contained 0.51 grams of methamphetamine.

After the State rested, the defense called Brockman to testify about his version of the events on the night of his arrest. According to Brockman, the baggie did not belong to him. He explained that he had been moving around the front yard because he had stepped in "cat poop" and was trying to remove it. He also testified that it was cold, and he was not wearing a coat when he arrived because he had not planned to be outside for very long.

Following deliberation, the jury convicted Brockman of both charges, and the district court sentenced him to 17 months in prison. Even so, it suspended his sentence and placed him on probation for 12 months. Thereafter, Brockman filed at timely notice of appeal.

ANALYSIS

On appeal, Brockman contends that the State failed to present sufficient evidence that he possessed the baggie containing methamphetamine found near where he was standing by his aunt's car on the night of his arrest. When a defendant challenges the sufficiency of the evidence, we review the evidence in the light most favorable to the State to determine whether a rational fact-finder could find the defendant guilty beyond a reasonable doubt. *State v. Moore*, 319 Kan. 557, 561, 556 P.3d 466 (2024). In doing so, we are not to reweigh the evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

Because the State prevailed at trial, it is Brockman's burden to establish that his conviction should be reversed for insufficient evidence. This is a heavy burden, and we are to reverse a conviction for insufficient evidence only "when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt." *State v. Meggerson*, 312 Kan. 238, 247, 474 P.3d 761 (2020). Likewise, we must take into consideration that the State may rely on circumstantial evidence along with any logical inferences that can properly be drawn from that evidence to support a conviction. *State v. Chandler*, 307 Kan. 657, 669, 414 P.3d 713 (2018). A conviction of even the gravest offense may be based on circumstantial evidence, and the evidence does not need to exclude every other reasonable conclusion to support a conviction. *State v. Zongker*, 319 Kan. 411, 417, 555 P.3d 698 (2024).

Here, Brockman testified that the baggie of methamphetamine did not belong to him and offered an alternative version of the events that occurred on the evening of his arrest. Had the jury found his testimony to be credible, it would have been reasonable to acquit him of the charges. Instead, after listening to all the testimony and viewing the videos admitted into evidence, the jury convicted Brockman notwithstanding his

testimony. Based on a review of the record on appeal, we find the jury's decision to be reasonable based on the evidence presented at trial.

To prove that an individual is guilty of possessing a controlled substance and/or drug paraphernalia, the State must come forward with evidence to establish beyond a reasonable doubt that a defendant had joint or exclusive control over the contraband with knowledge of or intent to have such control, or was keeping it in a place where the defendant had some measure of access and right of control. K.S.A. 2021 Supp. 21-5111(v); see *State v. Keel*, 302 Kan. 560, 567, 357 P.3d 251 (2015). When considering whether the State has presented sufficient evidence to show that a defendant knowingly possessed a controlled substance, the fact-finder—in this case a jury—may consider circumstantial evidence such as the proximity of the defendant to the area where the drugs were found, whether the drugs were in plain view, and whether the individual made incriminating statements or was behaving suspiciously. See *State v. Rosa*, 304 Kan. 429, 434, 371 P.3d 915 (2016).

A review of the record on appeal reveals that Sergeant Lusk testified he found the baggie of methamphetamine where Brockman had been standing during Deputy Klenk's conversation with Brockman's aunt. Although Brockman claims in his brief that the baggie was buried under the aunt's car, Sergeant Lusk testified that he found it lying on the ground and only partially covered with some gravel and dust. Significantly, the jury had the opportunity to review the dash cam video from Deputy Klenk's patrol vehicle, which we find bolsters the testimony of the deputies and supports the State's theory of prosecution.

The video shows Brockman standing with his hands on his aunt's car as he was instructed to do by Deputy Klenk. He then reaches into his pocket and pulls out his hand. Within a few seconds, Brockman begins rubbing his foot into the gravel. The video also shows Sergeant Lusk shining his flashlight on the ground where Brockman had been

5

standing and picking up the baggie of methamphetamine. So, the video confirms the location where the baggie was found in relation to where Brockman had been standing and that the baggie was plainly visible as Sergeant Lusk shined his flashlight on the ground.

In *Keel*, our Supreme Court described several factors that fact-finders may consider in determining whether a defendant possessed controlled substances. These nonexclusive factors include: (1) the defendant's past use or sale of drugs; (2) the defendant's proximity to the contraband; (3) the location where the contraband is found; and (4) any incriminating statements or suspicious behavior by the defendant. 302 Kan. at 567-68; see also PIK Crim. 4th 57.100 (2023 Supp.) (listing circumstances for nonexclusive possession cases). Consistent with Kansas law, the district court provided the jury with a list of factors to consider in determining whether the State proved that Brockman possessed the baggie of methamphetamine.

Although there is no evidence in the record on appeal of Brockman previously using or selling drugs, the record is replete with evidence to support a reasonable inference that he knowingly possessed the baggie of methamphetamine. As discussed above, the dash cam video confirms that the baggie was found directly where Brockman had been standing during the encounter; the baggie was easily seen by Sergeant Lusk using his flashlight; Brockman reached into his pocket and pulled his hand out quickly despite being instructed to stand still with his hands on the car; he then stomped his foot and rubbed it into the dirt where the baggie was found; and Brockman moved erratically and acted suspiciously throughout the encounter. When this evidence is viewed in the light most favorable to the State—including the reasonable inferences that can be drawn from such evidence—we find it to be sufficient to support the jury's verdict.

In conclusion, we find that the State presented sufficient evidence at trial to support the jury's reasonable inference that Brockman knowingly possessed the baggie of

6

methamphetamine found by Sergeant Lusk where he had been standing. In particular, we find that it was reasonable for the jury to infer from the dash cam video—as well as the other evidence presented by the State—that Brockman pulled the baggie of methamphetamine out of his pocket, dropped it to the ground, and attempted to hide it under the gravel. Accordingly, considering the evidence in a light most favorable to the State, we affirm Brockman's convictions for possession of methamphetamine and possession of drug paraphernalia.

Affirmed.