NOT DESIGNATED FOR PUBLICATION

No. 128,107

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

EUGENE DORNELL SETTLES,
*Appellant.*

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS M. SUTHERLAND, judge. Submitted without oral argument. Opinion filed May 29, 2026. Affirmed.

*Merideth J. Hogan*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before MALONE, P.J., BRUNS and HURST, JJ.

PER CURIAM: Eugene Dornell Settles appeals his conviction for aggravated robbery. On appeal, Settles contends that the State presented insufficient evidence to support his conviction; the district court admitted irrelevant evidence of his prior bad acts at trial and failed to give a limiting instruction in admitting this evidence; the State committed prosecutorial error during closing arguments; and cumulative error prevented him from receiving a fair trial. Based on our review of the record on appeal, we find that Settles received a fair trial and that there is no reversible error. Thus, we affirm Settles' aggravated robbery conviction.

1

FACTS

Around 9 p.m. on February 14, 2020, John Kim and his coworkers were leaving his place of business—the Star Beauty store—in Kansas City, Missouri. As they were doing so, an orange hatchback car with two people in it pulled up. The driver of the car opened his door and asked if the store was closed. After Kim told the driver that it was, the orange car drove away. According to Kim, the driver was a black male in his 20s or 30s wearing a blue hoodie, jeans, and a hat. Surveillance video of the interaction between Kim and the driver was admitted into evidence at trial.

Because it was Valentine's Day, Kim drove his gray 2020 Jeep Wrangler to a Hen House grocery store in Fairway to buy gifts for his wife. After spending about 10 minutes inside the store, Kim returned to the store's parking lot and began loading his purchases into the back of his Jeep. As he was doing so, an orange hatchback car—that Kim believes was the same one that had stopped at the beauty store about 20 minutes before—pulled behind Kim's Jeep.

The driver of the orange car got out, pulled out a dark gray handgun that looked dirty or chipped, and pointed it at Kim. Although Kim was focused on the gun, he believed the man was the same person who he had talked to outside his business. The man demanded Kim's keys, but he initially gave the driver his wallet and then put his hands in the air.

When the man again demanded the keys to the Jeep, Kim pointed to his jacket pocket. At that point, the man reached into Kim's pocket, took his keys, got into the Jeep, and drove away. Then, the passenger in the orange car closed the driver's side door and also drove away. At trial, surveillance video of the robbery outside the Hen House was admitted into evidence.

Kim called the police and officers from the Fairway Police Department responded. Officer Mandy Bayless spoke with Kim who described the person who robbed him at gunpoint as a black male in his 20s or 30s who was wearing a blue hoodie with the hood up, blue jeans, white shoes, and a hat. Kim—who himself was 6 feet tall—reported that the man was shorter than him, measuring up to about his chin. Kim also told Officer Bayless that he did not get a good look at the man's face because his focus was on the gun the man was pointing at him. Kim told Bayless that he believed the individual was the same person who had approached him at the Star Beauty store.

Kim's Jeep was equipped with a SiriusXM Guardian GPS system that enabled tracking of the vehicle. In the late hours of February 14, 2020, SiriusXM Guardian notified the Fairway Police Department that the Jeep was at a house in Kansas City, Missouri. As a result, the officers from Fairway sought assistance from the Kansas City Missouri Police Department. Officers were sent to the house where they observed the Jeep in the driveway.

After waiting nearby, around 12:40 a.m., the officers eventually saw the headlights of the Jeep come on and the Jeep pull out of the driveway. Settles drove away at a high rate of speed, and the officers pursued him at speeds up to 90 miles per hour. The pursuit eventually came to an end after stop sticks were deployed that punctured the Jeep's tires. When officers stopped him, Settles was wearing jeans, a blue zippered hoodie, a blue Seattle Seahawks jersey, and black and white shoes. At trial, a dash cam video of the police chase and the stop was admitted into evidence.

Inside the Jeep, the officers found Kim's backpack and wallet. In addition, they found a Seattle Seahawks hat and a handgun that did not belong to Kim. At trial, the State introduced a photograph of the gun found in the Jeep into evidence. Kim testified that the gun in the photograph was about the same size as the one used in the robbery. A week

after the robbery, the police asked Kim to look at a photo lineup, but he was unable to identify Settles as the man who robbed him.

After his arrest, Settles called Darlene French—who lived in the house where the Jeep was located after the robbery—from the jail. The audio of the approximately 14-minute conversation was introduced into evidence at trial. Moreover, Detective Edward Pileski testified about the conversation. He testified that he believed that Settles was confused about how law enforcement had found the Jeep at French's house and thought someone had snitched on him about the stolen Jeep "'being in [her] driveway.'"

DNA samples were collected from several items found in the Jeep, including Kim's backpack, his wallet, and the gun. DNA samples were also collected from Kim and Settles for comparison. A DNA analyst from the Kansas City Police Crime Laboratory testified at trial that Settles was likely a major contributor to the DNA samples found on the gun. The analyst explained that DNA profiles can contain mixtures of DNA profiles from various individuals. She testified:  "The genetic information from [the gun] is 170 octillion times more likely to be observed if [Settles] and four unknown individuals are the contributors, versus if five unknown individuals are the contributors."

A second analyst testified that Settles' DNA was identified as likely contributing to the DNA on the wallet. She indicated that the sample was 16,200 times more likely to be Settles' DNA and three unknown individuals than if it was a random person. Kim's DNA was one of the trace contributors that could not be reliably compared. On the handle of Kim's backpack, the sample was 191 million times more likely to be Settles' DNA and two unknown individuals than if it was a random person. It was 53 times more likely that Kim's DNA was also present on the backpack handle.

The State charged Settles with one count of aggravated robbery. The district court commenced a two-day jury trial on October 10, 2023. During the trial, the State presented

4

the testimony of 12 witnesses and offered more than 50 exhibits that were admitted into evidence. The State's exhibits included surveillance video, dashcam footage, investigation reports, and photographs. In his defense, Settles offered one exhibit that was admitted into evidence—the photo lineup shown to Kim about a week after the robbery. The record also contains a second defense exhibit—a photo of Settles—but it does not appear to have been admitted into evidence. However, the same photo was admitted into evidence as a State's exhibit.

After hearing the evidence, the jury found Settles guilty as charged. Based on a criminal history score of A, the district court sentenced Settles to 247 months in prison to be followed by 36 months of postrelease supervision. Thereafter, Settles filed a timely notice of appeal.

ANALYSIS

*Sufficiency of the Evidence*

On appeal, Settles first contends that the State failed to present sufficient evidence to support his conviction of aggravated robbery. Settles essentially asks us to reweigh the evidence by pointing to evidence that he believes weakens the State's case. But when a defendant challenges the sufficiency of the evidence, we must review the evidence in a light most favorable to the State to determine whether a rational factfinder could find the defendant guilty beyond a reasonable doubt. In doing so, we are not to reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024); *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

Generally, a conviction should be reversed based on insufficient evidence "only when the testimony is so incredible that no reasonable fact-finder could find guilt beyond

a reasonable doubt." *State v. Meggerson*, 312 Kan. 238, 247, 474 P.3d 761 (2020). The party challenging the sufficiency of the evidence—in this case Settles—bears a high burden to show that a conviction should be reversed. To the extent that we must also interpret the aggravated robbery statute, our review is unlimited because interpretation of a statute involves a question of law. *State v. Moore*, 319 Kan. 557, 561, 556 P.3d 466 (2024).

To obtain a conviction, the State must prove each element of an offense beyond a reasonable doubt. In doing so, the State may rely on circumstantial evidence and any logical inferences the jury could properly draw from that evidence. *State v. Chandler*, 307 Kan. 657, Syl. ¶ 3, 414 P.3d 713 (2018). If an inference is reasonable, the jury has the right to make that inference. *State v. McClelland*, 301 Kan. 815, 820, 347 P.3d 211 (2015). Even a conviction for the gravest offense may be based on circumstantial evidence. *State v. Zongker*, 319 Kan. 411, 417, 555 P.3d 698 (2024).

To establish the crime of aggravated robbery in this case, the State was required to prove beyond a reasonable doubt that Settles: (1) knowingly took property from the person or presence of Kim; (2) took the property by threat of bodily harm to Kim; and (3) was armed with a dangerous weapon. K.S.A. 21-5420(b)(1). A review of the record in this case reveals that the district court properly instructed the jury regarding each of these elements at trial. After considering the evidence presented at trial in light of these elements, the jury found Settles to be guilty.

At trial, the State presented ample evidence supporting the elements of aggravated robbery. In fact, the parties agreed during closing arguments that the only contested issue was the identity of the robber. The evidence presented by the State to prove that Settles was the robber included—but was not limited to—the following:

- The robber was driving an orange hatchback car. As Kim pointed out, there are not a lot of orange vehicles on the road.
- A detective testified that he investigated the orange hatchback and determined that it was rented by Settles from a ride-share company called Turo, and he never returned the vehicle.
- Kim described the robber as a black male in his 20s or 30s, wearing blue jeans, a blue sweatshirt with a hood, and a hat.
- When Settles was arrested, he was wearing similar clothing and other items matching this description were found in the stolen Jeep.
- After the robbery, law enforcement officers used the Jeep's GPS system to find it parked at a residence in Kansas City, Missouri.
- After confirming that the Jeep was at the residence, officers from the Kansas City Missouri Police Department waited to see who got into the vehicle.
- The officers observed the Jeep headlights eventually come on and the Jeep leave the driveway. They followed it and instead of stopping, it fled the scene at a high rate of speed.
- Once the Jeep was stopped using spike strips, Settles was identified as the driver.
- Inside the Jeep, the officers found personal property belonging to Kim, a gun that Kim testified to be the same size as the gun used in the robbery, and other items.
- In a phone call from jail to the resident of the house at which the Jeep was found, Settles spoke about sitting in the vehicle in the driveway under police surveillance.
- During the call, Settles made statements about his belief that someone in the house must have given the police his location.

7

- DNA swabs taken from Kim's backpack, the wallet, and the gun found in the Jeep were consistent with Settles' DNA.

Although it is undisputed that Kim was unable to identify Settles from a photo lineup, it was the jury's role to determine the weight to be given to this evidence. In other words, the jury had the duty to weigh the evidence, resolve evidentiary conflicts, and make witness credibility determinations. See *Mendez*, 319 Kan. at 723. Here, a review of the record reveals that the jury fulfilled its duty, appropriately followed the district court's legal instructions, and concluded that Settles was guilty of aggravated robbery beyond a reasonable doubt. Accordingly, based on our review of the evidence in the record in the light most favorable to the State, we find that Settles' aggravated robbery conviction was supported by sufficient evidence.

*K.S.A. 60-455 Evidence*

Next, Settles contends that the district court erred in admitting evidence that he had rented the orange hatchback from a ride-share company and failed to return it to the owner. In particular, he argues that the evidence of his failure to return the orange hatchback was inadmissible under K.S.A. 60-455. In response, the State argues that the evidence regarding the orange hatchback was part of the evidence of the current crime and not K.S.A. 60-455 evidence. Alternatively, the State argues that even if there was error, it was harmless.

At trial, Settles argued that while the State could reference his rental and continued possession of the orange hatchback, it should be prohibited from introducing evidence that he failed to return the vehicle to the owner, as this constituted evidence of a prior bad act. In response, the State argued the evidence was probative not only of Settles' rental of the orange hatchback, but also of his failure to return it and his continued possession of the vehicle at the time of the aggravated robbery. According to the State, the evidence did

not fall under K.S.A. 60-455 because it was offered to establish the identity of the robber, not to prove a prior bad act.

At trial, Detective Pileski testified that he determined that Settles rented the orange hatchback through Turo on November 23, 2019. In a photo provided to Turo in order to rent the car, Settles is shown posing with his driver's license. The detective further testified that according to the Turo documents, Settles was supposed to return the car by 11 p.m. on the same day, but he failed to do so. Moreover, Detective Pileski testified that Settles rented the orange car using a payment method linked to the address where the Jeep was later found in the early morning hours following the robbery.

K.S.A. 60-455(a) states that "evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion." If prior crimes evidence is admitted under K.S.A. 60-455 in a jury trial, a limiting instruction must be provided to inform the jury of the specific purpose for which the evidence was admitted. *State v. Evans*, 313 Kan. 972, 987, 492 P.3d 418 (2021).

In reviewing the admission of prior crimes evidence under K.S.A. 60-455, we use a three-step test. First, we consider whether the evidence is relevant to establish a material fact. Second, we determine whether the material fact is disputed and whether it is relevant to prove the disputed fact. Finally, we must consider whether the probative value of the evidence outweighs its prejudicial effect. *State v. Claerhout*, 310 Kan. 924, 927-28, 453 P.3d 855 (2019).

The State argues that K.S.A. 60-455 does not prohibit admission of the evidence of other crimes and civil wrongs if it relates to the elements of the current crime that is the subject of the trial. In support of its position, the State argues that events before and

after the charged offense that are "'intertwined'" with the offense fall outside of K.S.A. 60-455. *State v. Sieg*, 315 Kan. 526, 534, 509 P.3d 535 (2022); see *State v. Butler*, 307 Kan. 831, 861, 416 P.3d 116 (2018). Here, the parties do not dispute that the evidence that Settles rented an orange hatchback and still had possession of it at the time of the aggravated robbery was relevant to prove the identity of the robber. The closer question is whether the evidence of the failure to return the orange hatchback beyond the agreed time was material.

Regardless, even if we assume that the district court should have excluded this evidence, we find that its admission was harmless. When applying the harmless error test, we must determine if there is a reasonable probability that the alleged error impacted the outcome of the trial considering the entire record. *State v. Campbell*, 317 Kan. 511, 518, 532 P.3d 425 (2023); see K.S.A. 60-261. The State has the burden to show the alleged error was harmless. *State v. McCullough*, 293 Kan. 970, 983, 270 P.3d 1142 (2012).

The Kansas Supreme Court has outlined three types of prejudice that can result from admitting evidence of prior bad acts. First, a jury might exaggerate the weight of the evidence where defendants have committed a similar bad act and might conclude they also committed the charged crime. Second, there is a danger that a jury might conclude that a defendant deserves punishment because he or she is a general wrongdoer. Third, a jury might assume that a defendant's evidence should not be believed. *Campbell*, 317 Kan. 511, Syl. ¶ 2.

As discussed above, the evidence presented by the State at trial regarding the identity of the person who committed the armed robbery was substantial. In addition to the testimony of witnesses, the State presented more than 50 exhibits, including surveillance video, dashcam video, audio recordings from the jail, and DNA test results. Perhaps most significant, Settles was driving Kim's stolen Jeep and attempting to flee from the police at a high rate of speed just hours after the armed robbery occurred. He

was also in possession of Kim's personal property, and DNA consistent with Settles was found on Kim's backpack and wallet. Under these circumstances, we find no reasonable probability the alleged error affected the outcome of the trial.

*Prosecutorial Error*

Settles also contends that the State committed prosecutorial error during closing arguments. He argues that the prosecutor inappropriately used the terms "'we know'" and "'you know'" several times. As such, Settles suggests that the prosecutor asserted her personal opinion regarding the robber's identity. In response, the State contends that even if there was error, it was harmless.

Settles specifically points to the following statements as the "most impactful":

1. "Ladies and gentlemen, the State would argue that the evidence shows that that individual, the someone, the Defendant, is Eugene Settles. How do *we know* this?"
2. "The State is not simply relying on the DNA evidence to say that that is why *we know* the Defendant is Eugene Settles."
3. "And *you know* what the surveillance footage shows? It shows the Defendant is Eugene Settles." (Emphases added.)

In evaluating claims of prosecutorial error, we follow the following two-step analysis:

"To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if

11

the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted.]" *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

Here, the record reflects that the prosecutor used the phrases "we know" and "you know" in discussing the identity of the robber. Certainly, these phrases can simply be figures of speech and are often used outside the courtroom. Nevertheless, a prosecutor must exercise caution in using phrases like "we know" and "you know" during a criminal trial unless a fact is truly undisputed. See *State v. King*, 308 Kan. 16, 30-31, 417 P.3d 1073 (2018). In particular, prosecutors must be careful not to exceed the wide latitude afforded to them by using "we know" to draw inferences for the jury—even if the inferences are otherwise reasonable. 308 Kan. at 34.

As our Supreme Court has explained:

"[A] prosecutor's wide latitude does not extend to announcing the prosecutor's opinion on issues for the jury, including the defendant's guilt or innocence or witness credibility. . . . [A] prosecutor errs by using the phrase 'we know' during closing argument in the context of making inferences for the jury because that use conveyed the prosecutor's opinion, which is irrelevant. . . . [T]his holding applies 'even if the inferences being drawn were reasonable.' But use of a 'we know' statement is not prosecutorial error when the evidence being discussed is not controverted. [Citations omitted.]" *State v. Alfaro-Valleda*, 314 Kan. 526, 538, 502 P.3d 66 (2022).

Kansas courts have also found that the term "you know" can sometimes be erroneous depending on the circumstances. See *State v. Carter*, 305 Kan. 139, 149-50, 380 P.3d 189 (2016). But "we know" and "you know" are not synonymous. In fact, a "you know" statement may keep "the focus squarely on the *jury's* judgment—not the prosecutor's personal opinion." *State v. Bobian*, 321 Kan. 169, 183, 574 P.3d 385 (2025).

In the present case, we find that the prosecutor erred by using the phrase "we know" in arguing that Settles was the person who committed the aggravated robbery. This is because the use of the phrase suggested that the prosecutor was giving the jury her personal opinion about the robber's identity. Instead, the prosecutor should have made it clear that it is the jury's role to look at the evidence as a whole and make that determination.

Finding prosecutorial error, we turn to the question of whether the error was harmless. Because prosecutorial error implicates a defendant's constitutional right to a fair trial, this court applies the traditional constitutional harmless error test. *State v. Slusser*, 317 Kan. 174, 192, 527 P.3d 565 (2023). Under this test, the State must prove beyond a reasonable doubt that the error did not affect the outcome of the trial in light of the entire record. *State v. Gallegos*, 313 Kan. 262, 273, 485 P.3d 622 (2021).

In *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012), our Supreme Court held that to find an error harmless under K.S.A. 60-261, K.S.A. 60-2105, and the United States Constitution, we must be able to declare the error "did not affect a party's substantial rights, meaning it will not or did not affect the trial's outcome." In making this determination, we look at a variety of factors because every instance of prosecutorial error is fact specific. Hence, we focus on the effect—if any—of the error on the outcome of the trial. *Sherman*, 305 Kan. at 110-11.

In reviewing the record, we find that the district court properly instructed the jury: "Statements, arguments, and remarks of counsel are intended to help in you understanding the evidence and in applying the law, but they are not evidence. If any statements are made that are not supported by evidence, they should be disregarded." Absent a showing to the contrary, we presume that the jury followed the instructions given by the district court. *Slusser*, 317 Kan. at 193. Here, Settles has not shown that the jury failed to follow the district court's instructions.

13

We find it significant that Settles' sole theory of defense was based on identity. In closing argument, defense counsel highlighted Kim's inability to identify Settles in the photo lineup. But the jury also weighed this fact against the substantial evidence presented by the State to establish that Settles was the robber.

Without repeating all the evidence, we again point out that the jury was presented with evidence that Settles had been found in possession of Kim's Jeep and personal property just hours after the aggravated robbery. The evidence also showed that when he left the residence—the address of which he had previously given to a rental car company as his own—Settles fled from the police at speeds reaching 90 miles per hour. The jury was presented with extensive circumstantial evidence supporting the State's position that Settles was the robber. This evidence included videotape evidence, an audio recording of a phone call Settles made from jail, and DNA evidence. Additionally, the jury was presented with evidence that Settles had rented an orange hatchback car that was the same make and model as the car used during the aggravated robbery.

Based on our review of the entire record, we find no likelihood that the "we know" or "you know" phrases used by the prosecutor during closing argument affected the outcome of the trial. Instead, we find that the jury was properly instructed regarding the law, appropriately weighed the evidence, and understandably concluded beyond a reasonable doubt that it was Settles who committed the aggravated robbery. Accordingly, we conclude that there is no reasonable possibility that the prosecutorial error contributed to the jury's verdict.

*Cumulative Error*

Finally, Settles contends that he was denied a fair trial based on cumulative error. In response, the State contends that Settles was not denied a fair trial under the totality of the circumstances. In assessing the cumulative effect of errors during a trial, we examine

14

such errors in context of the entire record, the nature and number of errors, whether they are interrelated, and the overall strength of the evidence. *State v. Guebara*, 318 Kan. 458, 483, 544 P.3d 794 (2024).

Here, we have found—at most—two errors:  (1) the admission of evidence that Settles failed to return the orange hatchback that he rented; and (2) the prosecutor's erroneous use of the phrases "we know" and "you know." Again, we note the overall strength of the evidence presented by the State that was properly admitted by the district court at trial. Considering the substantial amount of evidence in this case identifying Settles as the robber, we find these two errors did not deprive Settles of a fair trial. Even when aggregated, we find them to be harmless beyond a reasonable doubt.

We, therefore, affirm Settles' conviction for aggravated robbery.

Affirmed.