IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 121,316

STATE OF KANSAS,
*Appellee*,

v.

JOSHUA L. KNAPP,
*Appellant*.

SYLLABUS BY THE COURT

On the facts of this case, even assuming the district court erred in admitting evidence that the defendant "committed a crime or civil wrong" on another occasion, contrary to K.S.A. 2020 Supp. 60-455, the remaining evidence was overwhelming and any assumed error was harmless.

Appeal from Allen District Court; DANIEL D. CREITZ, judge. Opinion filed July 23, 2021. Affirmed.

*Forrest A. Lowry*, of Ottawa, argued the cause and was on the brief for appellant.

*Jerry B. Hathaway*, county attorney, argued the cause, and *Derek Schmidt*, attorney general, was with him on the brief for appellee.

PER CURIAM: Joshua L. Knapp, Amber Boeken, and Brent Cagle killed Shawn Cook over the course of a few hours after a robbery gone bad. Knapp and Boeken had driven Cook to a remote rural area (in a truck they had borrowed from James Myers) and attempted to rob him of drugs and money. But Knapp and Cook physically tangled with one another, and Knapp badly cut Cook's neck with a knife. Still alive, Cook asked to be taken to a hospital. Knapp and Boeken persuaded Cook to get in the truck bed and

1

pretended to take him for medical care. Instead, they sought out directions to a spot on the Neosho River to dump Cook's body.

In the meantime, the borrowed truck ran out of gas. Boeken called Cagle and asked him to bring his truck to their location. When Cagle arrived, continuing the hospital ruse, the three convinced Cook to get into the bed of Cagle's truck after lining it with a plastic tarp. Knapp, Boeken, and Cagle then drove to the banks of the Neosho River. Using the tarp, the three dragged Cook's seemingly inert body into the river. But Cook revived and tried to swim away. Seeing this, Knapp waded into the water and administered the final death blows by stabbing Cook repeatedly in the neck.

Knapp and the others undertook efforts to conceal their crime, but a law enforcement investigation eventually led to their arrest. A key break in the investigation came when another friend of Knapp's—Matthew Broyles—told police that Knapp had confessed to Broyles that he and Boeken had killed Cook.

Eventually, Cook's body was found; an autopsy confirmed he died from stab wounds to the neck; Cook's DNA was found inside and outside of Myers' truck; and Boeken, Cagle, and Myers all testified consistently against Knapp. A jury convicted Knapp of first-degree murder and two counts of interference with a law enforcement officer. Knapp received a controlling hard 50 sentence and he directly appeals.

On direct appeal, Knapp claims the district court erred repeatedly by admitting evidence in violation of K.S.A. 60-455. He also claims the district court erred by admitting hearsay evidence. Finally, Knapp claims cumulative error denied him a fair trial. We affirm.

2

K.S.A. 2020 Supp. 60-455(a) prohibits the use of "evidence that a person committed a crime or civil wrong on a specified occasion" and makes it "inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion." The same evidence is admissible, however, if it is "relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." K.S.A. 2020 Supp. 60-455(b); see *State v. Meggerson*, 312 Kan. 238, 253, 474 P.3d 761 (2020).

Before trial, Knapp moved to exclude from evidence any references to prior convictions, probation, parole, arrests, and law enforcement contacts. He requested the district court exclude any statements regarding his "alleged involvement in other homicides using a gun" and any "alleged commission of other crimes or bad acts." The trial court denied the motion after the State advised the court that it would not seek to introduce any potential 60-455 evidence.

During the State's case-in-chief, Knapp objected on the following five occasions and asked for a mistrial—each time alleging a violation of K.S.A. 2020 Supp. 60-455. First, when Boeken testified that before the final truck ride, Knapp and Cook "were arguing in [her] living room about some backpack" and that Knapp "took [Cook's] phone at that time." Second, when Boeken testified that the bad blood between Knapp and Cook had all "started at my house. After they had gotten into a fight." Third, when Kansas Bureau of Investigation Senior Special Agent James Botts testified that Cagle told him Knapp and Boeken said they had "done this before" after forcing Cook into the water. Fourth, when Myers testified that he had only seen Knapp one time following the crime and Knapp had "tried to run me off the road." And finally, when Cagle answered a question about how he knew Knapp by pointing to the defense table and responding, "I was in jail with him in Cherokee County."

The district court denied all five requests for a mistrial and did not find any of the instances to violate K.S.A. 2020 Supp. 60-455. The court did admonish the jury to disregard the comments about Knapp having "done this before" as well as Cagle's comment about being in jail with Knapp.

The court instructed the jury as follows:

"Instruction 2

"In your fact finding you should consider and weigh everything admitted into evidence. This includes testimony of witnesses, admissions or stipulations of the parties, and any admitted exhibits. *You must disregard any testimony or exhibit which I did not admit into evidence.*" (Emphasis added.)

and

"Instruction 23

. . . .

"Your verdict must be founded entirely upon the evidence admitted and the law as given in these instructions."

During the instructions conference, the court offered a more specific limiting instruction over the testimony the court admonished the jury to disregard. But Knapp declined. Moreover, the State requested a specific instruction on K.S.A. 2020 Supp. 60-455 but Knapp asked the court not to give it, and so it was not given.

4

"Violations of K.S.A. 2013 Supp. 60-455 are subject to the nonconstitutional harmlessness standard." *State v. Verser*, 299 Kan. 776, 786, 326 P.3d 1046 (2014). In order for an appellate court to find any error harmless under this standard, the State must convince it that "there is no reasonable probability the error affected the trial's outcome in light of the entire record." *State v. McCullough*, 293 Kan. 970, Syl. ¶ 9, 270 P.3d 1142 (2012). In this case, even assuming the district court judge erred by either failing to properly analyze this evidence under K.S.A. 2020 Supp. 60-455; or by failing to properly exclude it; or by failing to properly instruct the jury—we are convinced the errors would be harmless in light of the entire record.

The evidence against Knapp was overwhelming. Multiple independent eyewitnesses testified consistently about the events; the circumstantial evidence—including DNA evidence—overwhelmingly supported the eyewitness testimony; and Knapp himself confessed to the crime to yet another individual who testified. We find no reasonable probability that any of the evidence Knapp now objects to would have been a difference maker to the jury. See *Verser*, 299 Kan. at 786 (assuming without deciding 60-455 error and finding any assumed error harmless in light of the overwhelming evidence of guilt).

Next, Knapp claims the district court erred by admitting hearsay evidence. Broyles testified at Knapp's preliminary hearing and was subject to cross-examination. After the preliminary hearing, but before Knapp's jury trial, the State moved to have Broyles declared unavailable. At a hearing on the State's motion, law enforcement testified they were unable to locate Broyles for Knapp's trial and the district court found Broyles unavailable. At trial, the State sought to admit Broyles' preliminary hearing testimony and Knapp objected.

Instead, Knapp asked to admit only specific portions of a sworn statement made by Broyles to police before the preliminary hearing. Knapp claimed that statement was exculpatory and inconsistent with Broyles' preliminary hearing testimony. Knapp argued the sworn statement was a deposition under K.S.A. 2020 Supp. 60-460(c) and exempt from hearsay because the district court ruled Broyles unavailable. He also claimed any prejudice from entering the sworn statement segments would only impact the defense. The State objected to entering only part of the sworn statement. After some negotiation, Knapp and the State agreed to admit the sworn statement with Knapp's limited redactions.

Now on appeal, Knapp claims the sworn statement read to the jury contains inadmissible hearsay from third persons referenced by Broyles in the statement. Knapp characterizes this alleged error in several different ways—as a hearsay violation, as prosecutorial error, and as an abuse of discretion by the district court. But no matter how it is characterized, Knapp cannot avoid the plain fact that he requested and agreed to the redacted sworn statement as read to the jury.

It is well settled that a litigant may not invite an error and then complain of the error on appeal. *State v. Stewart*, 306 Kan. 237, 248, 393 P.3d 1031 (2017). Consequently, we decline to consider this claim of error as it was plainly invited by Knapp.

Finally, Knapp argues cumulative error denied him a fair trial. Having assumed several errors, we conclude the overwhelming evidence of guilt continues to render the assumed errors harmless, even when their cumulative effect is considered.

Affirmed.

6

STEGALL, J., concurring: I concur fully with the majority opinion. I write separately simply to explain that I would find the district court did not err with respect to the alleged prior bad acts evidence. When analyzing claims such as these, courts must first ask the "threshold question of whether K.S.A. 60-455 has any application" at all. *State v. Breeden*, 297 Kan. 567, 577, 304 P.3d 660 (2013). This entails questions of statutory interpretation which we review de novo. Subsection (a) of the statute limits its application "to situations involving 'evidence that a person committed a crime or civil wrong on a specified occasion' to infer a person has the disposition or a propensity to 'commit[] another crime or civil wrong *on another specified occasion*.'" 297 Kan. at 577.

Neither of the instances in Boeken's testimony objected to amounted to events "on another specified occasion." Likewise, Myers' testimony also did not refer to "another specified occasion." The disagreements and "fight" between Knapp and Cook; Knapp taking Cook's phone; and Knapp trying to run Myers off the road all took place within the overall narrative of the crime itself. They are not other bad acts entirely divorced from the events of this case. They are instances either leading directly to the crime or flowing out of the crime, and therefore they provide a full context of the crime itself for the jury. See *State v. Butler*, 307 Kan. 831, 861, 416 P.3d 116 (2018) (events before and after the crime which are "intertwined" with the crime are part of the res gestae and fall outside the ambit of K.S.A. 60-455); *State v. King*, 297 Kan. 955, 963-64, 305 P.3d 641 (2013) ("Court of Appeals' ultimate point is correct: K.S.A. 60-455 does not apply if the evidence relates to crimes or civil wrongs committed as part of the events surrounding the crimes for which King was on trial—that is, the res gestae of the crime.").

Similarly, the comments about Knapp having "done this before" and about Knapp having been in jail with Cagle are too vague and nonspecific to qualify as 60-455

7

evidence. In order to qualify as a prior bad act under K.S.A. 2020 Supp. 60-455, the statute requires specificity from the evidence in question. Innuendo and uncertain inferences are insufficient to trigger the protections of K.S.A. 2020 Supp. 60-455. Our Court of Appeals has previously held that similarly vague comments about a defendant's "prior dealings" were "too vague and imprecise to constitute evidence of . . . 'a crime or civil wrong on a specified occasion.'" *State v. Marks*, No. 103,794, 2011 WL 2191694, at *3 (Kan. App. 2011) (unpublished opinion). I agree. Here, the mere suggestion that Knapp had "done this before" without any specificity or that he had once been in jail are insufficiently particular and specific to qualify as prior bad acts evidence under the statute.

Moreover, the district court took a belt and suspenders approach in these two instances and instructed the jury to disregard the comments just to ensure Knapp was not somehow prejudiced. The court offered to instruct the jury specifically on 60-455 evidence, but Knapp declined the offer. The court did properly instruct the jury to decide the case based only on admitted evidence. I would find no error in the district court's handling of these matters.