NOT DESIGNATED FOR PUBLICATION

No. 126,598

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DANIEL GENE BOSLEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Cowley District Court; CHRISTOPHER SMITH, judge. Submitted without oral argument. Opinion January 9, 2025. Affirmed in part and dismissed in part.

*Emily Brandt*, of Kansas Appellate Defender Office, for appellant.

*Ian T. Otte*, deputy county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before CLINE, P.J., BRUNS and COBLE, JJ.

PER CURIAM: Daniel Gene Bosley appeals after a jury convicted him of two counts of aggravated battery; one count of aggravated assault; one count of aggravated intimidation of a victim; four counts of criminal threat; one count of misdemeanor criminal restraint; and one count of misdemeanor domestic battery. On appeal, Bosley raises six issues relating to sufficiency of the evidence, evidentiary questions, prosecutorial error, cumulative error, and criminal history. Based on our review of the record, we find no reversible error. Moreover, we find that the sentencing issue relating to his criminal history score should be dismissed under K.S.A. 21-6814(d). Thus, we affirm Bosley's convictions and sentence.

1

Bosley and his girlfriend were in a relationship for about 11 years and had children together. In late 2021 and early 2022, he became increasingly more aggressive toward the girlfriend. In January 2022, Bosley would not let her go to work. He also took her cell phone away from her between Christmas 2021 and Valentine's Day 2022. During this time, Bosley would not allow her to go out of their residence without him, and he always wanted her near him. The girlfriend suspected that Bosley's behavior had changed because he had started smoking methamphetamine.

On February 13, 2022, Bosley did not allow the girlfriend to go to Sunday dinner with her family. According to the girlfriend, Bosley hit her for the first time and busted her lip open. The children were taken to Bosley's sister's house because "they didn't need to see what was going to happen." Bosley told the girlfriend that if she "left or said anything, or did anything," he was going to kill her. Around that time, he also started carrying a 12-inch hunting knife in a sheath.

The next day, Bosley pulled out the knife, pressed it up against the girlfriend's neck, and again said he was going to kill her. Although the girlfriend could not remember everything that occurred the next few days, she testified at trial that she recalled him saying "[I]f I ran, if I talked to anybody, if I said anything, he was going to kill me. He was going to hurt me." She further testified that Bosley held the hunting knife against her neck several times over the course of those days and that this put her in fear.

On February 16, 2022, Bosley hit the girlfriend's head against a wall several times. As a result, she suffered a six-inch laceration on her skull and a subdermal hematoma. At trial, she testified that her head injury resulted in headaches, light sensitivity, and short-term memory issues. She also testified that after she cleaned her head wound, Bosley threw her onto their bed and raped her.

2

The following day, police officers came to their residence to perform a welfare check because the girlfriend's sister reported that she had observed injuries on her sister's face. The sister also told Winfield Police Officer Cutter Brazle that the girlfriend had stopped talking to her family and that she was unable to get in touch with her sister. When Officer Brazle went to the house, Bosley answered the door and indicated that the girlfriend was asleep. Bosley went to get the girlfriend and told her to "make sure you tell him it was the neighbor or something like that." In speaking to the girlfriend, Officer Brazle observed that she had "severe trauma to the left side of the face." When asked who had injured her, she gave the officer a neighbor's name.

Officer Brazle went to the apartment where the neighbor allegedly lived but it appeared to be vacant, and no one answered when he knocked. The officers called emergency medical services to check on the girlfriend's injuries. Although medical personnel examined her at the residence, she declined to go to the hospital for additional care because she was terrified that Bosley would "find me and just hurt me more." According to the girlfriend, Bosley's demeanor was "[w]orse" after the welfare check, and he became even more paranoid. He evidently believed that she had been cheating on him.

On February 18, 2022, Bosley and the girlfriend stopped at the Casey's General Store where she was employed. While Bosley waited in the car, the girlfriend told a coworker that she needed help now because he was going to kill her. After leaving the store, Bosley drove to his sister's house and told the girlfriend not to get out. At one point, she opened the door but the alarm went off and Bosley came outside before she could run away. On that same day, Bosley was arrested on outstanding warrants unrelated to this case. After he was placed in custody, the girlfriend admitted to the police that it was indeed Bosley—and not a neighbor—who had inflicted her injuries.

The State charged Bosley with various violent crimes, including aggravated kidnapping, aggravated domestic battery, and criminal threat, among others. After a preliminary hearing, several additional counts were added. Ultimately, a second amended complaint was filed with a total of 16 counts.

Prior to trial, Bosley filed a motion for disclosure of a SANE/SART examination undergone by the girlfriend approximately a month prior to the events that led to the charges in this case. This motion was denied by the district court. Bosley also filed a motion seeking to exclude evidence of his prior bad acts. Specifically, he requested that the State be prohibited from presenting evidence or making any reference at trial to his "prior criminal record and/or probation."

The district court granted this motion and entered an order in limine restricting the State from introducing evidence of Bosley's prior criminal history unless he first introduced evidence of his good character. The order set forth that the State "should instruct its witnesses not to present any testimony as to the Defendant's prior criminal history, including convictions, probation, or parole unless the Defendant first introduces such evidence." The order noted the State is allowed to reserve its right to file a motion pursuant to K.S.A. 60-455. In addition, the State filed a motion in limine seeking to exclude evidence of the girlfriend's prior sexual conduct pursuant to K.S.A. 21-5502, which the district court granted.

The district court convened a three-day jury trial on March 6, 2023. At trial, the State presented the testimony of eight witnesses and offered six exhibits that were admitted into evidence. Likewise, Bosley testified in his own defense and offered three exhibits that were admitted into evidence. Furthermore, the State presented one rebuttal witness.

4

The girlfriend testified at trial about the events that occurred from February 14, 2022, to February 18, 2022. In particular, she testified:

"Q. And now, over the course of that week, about how many times did [Bosley] threaten you?

"A. Dozens.

"Q. Dozens. And was that an everyday occurrence or was that only on special days?

"A. That was every day.

"Q. So it would have happened the 14th?

"A. Yeah.

"Q. The 15th?

"A. Yes.

"Q. The 16th?

"A. Yes.

"Q. Seventeenth?

"A. Yes.

"Q. Eighteenth?

"A. Yes.

"Q. All right. Was [Bosley] carrying a hunting knife that entire week or only special days?

"A. The whole time.

"Q. The whole time. Now, you mention earlier that [Bosley] pulled it out and held it against your throat.

"Was that an every day occurrence or only on special days?

"A. That only happened several times.

"Q. Okay. What days did that happen? Do you remember?

"A. Not—it happened a lot but I can't tell you exactly when.

"Q. Did he pull it out, and not hold it against your throat, but threaten you with it?

"A. Sure, he would pull it out, hands up and wave it around.

"Q. Wave it around, and that put you in fear?

"A. Yeah.

"Q. And did that happen on the 14th?

"A. I believe so.

"Q. On the 15th?

5

"A. I mean . . . I can't—I can't say the specific dates, but it was during that four days."

The prosecutor then asked the girlfriend again:

"Q. So I want to take you back to that hunting knife that [Bosley] carried on his hip.

"You said that he's get it out and waving it around.

"A. Uh-huh.

"Q. And was he doing that on the 17th of February as well?

"A. Yes, I believe so.

"Q. And that scared you?

"A. Yeah."

Officer Brazle testified about his investigation. In particular, he was asked about the interview in which the girlfriend told him that it was Bosley and not a neighbor who had injured her. Officer Brazle testified that Bosley was not present when the officer spoke to the girlfriend because he had been arrested for warrants not related to this case. Although defense counsel objected on the grounds that the officer's response violated the order in limine, the district court found that the prosecutor's question did not violate the order. Nevertheless, the district court advised the prosecutor to "back off . . . from [this] line of questioning" and directed the jury not to consider the reason for Bosley's arrest during its deliberations.

After the State rested its case-in-chief, Bosley moved for a judgment as a matter of law. In response, the State candidly conceded that it had not presented sufficient evidence to support a conviction on the charge of aggravated domestic battery. Consequently, the district court granted the defense a judgment as a matter of law on that charge but denied the motion as to all the other charges.

In his defense, Bosley denied all additional allegations against him, including threatening his girlfriend, holding a knife to her neck, or ever physically attacking her. When asked about her injuries, Bosley claimed that she showed up at home with "a giant

6

gash in her head," a busted lip, and a bruised eye. He further claimed that "[o]nly [the girlfriend] and [the neighbor] know the truth" of what happened.

After deliberation, the jury returned with a mixed verdict. It acquitted Bosley on the charges of aggravated criminal sodomy, aggravated domestic battery, and three counts of aggravated assault. But it convicted him of two counts of aggravated battery, one count of aggravated assault, one count of aggravated intimidation of a victim, four counts of criminal threat, one count of misdemeanor criminal restraint, and one count of misdemeanor domestic battery. Subsequently, the district court sentenced Bosley to a controlling sentence of 235 months in prison to be followed by a consecutive 18-month jail sentence. The district court also ordered 36 months of postrelease supervision.

Thereafter, Bosley filed a timely notice of appeal.

ANALYSIS

*Sufficiency of the Evidence*

Bosley's first contention is that the State failed to present sufficient evidence to support three of his four convictions for criminal threat. Although he concedes that the State presented sufficient evidence to support the jury's determination that he was guilty of criminal threat arising out of his actions on February 14, 2022, he argues that there is not sufficient evidence in the record that he also made criminal threats on February 15, 16, or 17, 2022. Based on our review of the record on appeal, we find that the State did present sufficient evidence to support each of the criminal threat convictions.

When a defendant challenges the sufficiency of the evidence, we must review the evidence in a light most favorable to the State to determine whether a rational factfinder could find the defendant guilty beyond a reasonable doubt. *State v. Moore*, 319 Kan. 557,

7

561, 556 P.3d 466 (2024). In doing so, we are not to reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). Generally, a conviction should be reversed based on insufficiency of the evidence "only when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt." *State v. Meggerson*, 312 Kan. 238, 247, 474 P.3d 761 (2020).

On appeal, the defendant bears a high burden to establish that a conviction should be reversed for insufficient evidence. Nevertheless, to the extent we must interpret and apply any relevant statutes, our review is unlimited. *Moore*, 319 Kan. at 561. To obtain a conviction, the State must prove each element of an offense beyond a reasonable doubt. In doing so, the State may rely on circumstantial evidence along with any logical inferences properly drawn from that evidence. *State v. Chandler*, 307 Kan. 657, Syl. ¶ 3, 414 P.3d 713 (2018).

If an inference is reasonable, the jury has the right to make that inference. *State v. McClelland*, 301 Kan. 815, 820, 347 P.3d 211 (2015). And circumstantial evidence is sufficient to sustain a conviction even when there is no direct evidence. See *State v. Zeiner*, 316 Kan. 346, 351-52, 515 P.3d 736 (2022). In fact, even a conviction for the gravest offense may be based on circumstantial evidence. Moreover, the evidence does not need to exclude every other reasonable conclusion to support a conviction. *State v. Zongker*, 319 Kan. 411, 417, 555 P.3d 698 (2024).

In Kansas, to establish the crime of criminal threat, the State must prove: (1) that the defendant threatened to commit violence; and (2) that the defendant communicated that threat with the intent to place another in fear. K.S.A. 2021 Supp. 21-5415(a)(1). A review of the record in this case reveals that the district court properly instructed the jury regarding the elements of criminal threats that allegedly occurred on February 14, 15, 16, and 17. See PIK Crim. 4th 54.370 (2024 Supp.). After considering the evidence presented

8

at trial and considering the jury instructions given by the district court, the jury returned a verdict of guilty on each of the criminal threat charges.

At trial, the girlfriend testified that on February 14, 2022, Bosley told her that he was going to kill her. Although she could not specifically recall the details of the events that occurred on February 15, 16, and 17, 2022, the girlfriend testified that Bosley had threatened her "dozens" of times over the course of that week, and these threats were an "every day" occurrence. Specifically, the girlfriend confirmed that she was threatened on February 14th, 15th, 16th, and 17th:

"Q. So it would have happened the 14th?
"A. Yeah.
"Q. The 15th?
"A. Yes.
"Q. The 16th?
"A. Yes.
"Q. Seventeenth?
"A. Yes."

Although the girlfriend was unable to testify as to specific threats that Bosley made on each day, the jury could reasonably infer that the threats that started on February 14, 2022—when Bosley held a knife to her neck and threatened to kill her—continued over the course of the next several days. The girlfriend testified that she feared Bosley and that he had repeatedly threatened to hurt or kill her. When she was asked about what Bosley said to her on February 15, 2022, she testified: "Just that—if I ran, if I talked to anybody, if I said anything, he was going to kill me. He was going to hurt me."

At trial, the State needed to show that Bosley communicated a threat to commit violence with the intent of placing the girlfriend in fear on each of these days. See *State v. Stevenson*, 59 Kan. App. 2d 49, 65, 478 P.3d 781 (2020) (A threat is made "when the

9

statement reveals intent to inflict physical or other harm on another's person or property.") Even though the girlfriend could not recall exactly what was said on each of these days, she testified that Bosley threatened her dozens of times on February 15, 16, and 17, 2022.

The girlfriend also testified that Bosley threatened to kill her or hurt her if she talked to anybody, tried to leave him, or say anything about what had happened. During this period, Bosley hit her in the face, held a knife to her throat several times, and slammed her head against the wall causing a significant injury. In addition, the girlfriend testified that she was terrified that Bosley would harm her. A coworker also testified that on February 18, 2022, the girlfriend asked her for help and said that she was fearing for her life. Furthermore, the girlfriend told law enforcement officers after Bosley had been arrested on outstanding warrants that he had threatened to hurt or kill her. She explained that she had originally told the officers that another person was responsible for her injuries because Bosley had threatened to kill her.

The record reflects that the jury fulfilled its duty to weigh the evidence, to determine the credibility of the witnesses, and to make reasonable inferences based on the evidence. Likewise, we find that there is sufficient evidence in the record from which the jury could find beyond a reasonable doubt that Bosley threatened to commit violence against the girlfriend and communicated these threats to her with the intent to place her in fear on each of the dates charged. See K.S.A. 2021 Supp. 21-5415(a)(1). Accordingly, we affirm Bosley's criminal threat convictions.

*Evidence of Prior Crimes*

Next, Bosley contends that the district court abused its discretion in how it handled the admission of testimony from a law enforcement officer that he had been arrested on outstanding warrants unrelated to this case. In response, the State asserts that the district

court did not abuse its discretion in allowing the testimony, that it handled Bosley's objection appropriately, and that any potential error was cured by a limiting instruction given to the jury.

K.S.A. 2024 Supp. 60-455(a) generally prohibits the use of "evidence that a person committed a crime or civil wrong on a specified occasion" and makes it "inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion." Such evidence may be admissible on other grounds. In particular, it may be admitted if it is "relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." K.S.A. 2024 Supp. 60-455(b); see *Meggerson*, 312 Kan. at 253.

In reviewing the admission of prior crimes or civil wrongs evidence under K.S.A. 60-455, we apply a three-step test. First, we consider whether the evidence is relevant to establish a material fact at issue. Determining whether the evidence is material is subject to de novo review. Second, we determine whether the material fact is disputed and whether the material fact is relevant to prove the disputed fact. This determination by the district court is reviewed for an abuse of judicial discretion. Finally, we consider whether the probative value of the evidence outweighs its prejudicial effect. This step is also analyzed under an abuse of discretion standard of review. See *State v. Claerhout*, 310 Kan. 924, 927-28, 453 P.3d 855 (2019). If prior crimes or civil wrongs evidence is admitted under K.S.A. 60-455, a limiting instruction must be provided to the jury of the specific purpose for which the evidence was admitted. *State v. Evans*, 313 Kan. 972, 987, 492 P.3d 418 (2021).

Here, the State did not move to admit K.S.A. 60-455 evidence prior to trial. Rather, Bosley filed a pretrial motion in limine to exclude evidence of his "prior criminal record and/or probation." The district court granted the motion and entered an order in

11

limine to exclude evidence of Bosley's prior criminal history unless he first introduced evidence of his good character. Whether to grant or deny a motion in limine or to admit evidence at trial falls within the discretion of the district court. It is also important to recognize that an order in limine is temporary in nature and is subject to modification during the course of a trial. See *State v. Wash*, 320 Kan. 646, 659, 571 P.3d 568 (2025) (motion in limine orders are provisional and subject to modification during trial); *State v. Crume*, 271 Kan. 87, 100-01, 22 P.3d 1057 (2001).

At trial, the prosecutor asked Officer Brazle about his interview of the girlfriend on February 21 and 22, 2022. Specifically, the prosecutor asked if Bosley was with the girlfriend at the time. In response, the officer testified that Bosley was not present during those interviews because he had been arrested for outstanding warrants unrelated to this case. Defense counsel asserted a contemporaneous objection on the grounds that the testimony violated the order in limine.

The attorneys approached the bench, and a sidebar was held outside the presence of the jury. However, the sidebar was recorded. During the sidebar, defense counsel argued that a mistrial should be granted after the motion in limine was violated because it specifically provided "there [would] be no reference made to my client's criminal history . . . unless . . . we first let the cat out of the bag." Defense counsel noted that the order allowed the State to file a motion under K.S.A. 60-455 if it wanted to present such evidence, but it had not done so. In response, the prosecutor argued the motion in limine had not been violated because the witness "merely mentioned a warrant, which is not a conviction, a post-release, a parole, probation, that the order specifically covers."

After considering the arguments made by the attorneys, the district court determined that the State had not violated its order in limine because the question did not specifically cover matters protected by the order in limine. Still, the district court told the prosecutor to "back off . . . from any line of questioning having to do with that." In

addition, the district court agreed to provide a curative instruction, which directed the jury not to consider the reason for Bosley's arrest during deliberations. Immediately after the curative instruction was given, the prosecutor asked the officer: "[T]o be clear, [Bosley] was never arrested on these charges in this case. Correct?" The defense did not object to this question, and the officer responded that this was correct.

Although we are not convinced that the district court erred in determining that the State had not violated its order in limine, the State appears to concede in its brief that the testimony solicited was 60-455 evidence and that it did not move to admit such evidence prior to trial. But even if we assume that the K.S.A. 60-455 evidence of Bosley's arrest on outstanding warrants unrelated to this case was erroneously admitted into evidence, we find any such error to be harmless under the circumstances presented in this case.

Under K.S.A. 2024 Supp. 60-261, the erroneous admission or exclusion of evidence at trial is subject to review for harmless error. See *State v. Shields*, 315 Kan. 814, 832, 511 P.3d 931 (2022). Likewise, violations of K.S.A. 60-455 are subject to the nonconstitutional harmless error standard. *State v. Knapp*, 313 Kan. 824, 827, 490 P.3d 1228 (2021). For us to find harmless error under this standard, we must be convinced that there is not a reasonable probability that the alleged error impacted the jury's verdict considering the entire record. *State v. Campbell*, 317 Kan. 511, 518, 532 P.3d 425 (2023).

A review of the record reveals that even though the district court ruled that the State had not violated its order in limine, it admonished the jury: "Ladies and gentlemen of the jury, there was a question and answer exchange . . . about the reason for the arrest of the defendant. You had heard some information about the reason for the arrest of the defendant. You are not to consider that reason during your deliberations." Even though Bosley now suggests that the State "undid the admonishment" by asking the officer to clarify that the arrest was unrelated to this case, he did not assert a contemporaneous objection to this question. See K.S.A. 60-404 ("A verdict or finding shall not be set aside,

13

nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."); *State v. Hinostroza*, 319 Kan. 129, 142, 552 P.3d 1202 (2024) (failing to preserve any evidentiary argument without a timely and specific objection).

Based on our review of the entire record, we find that the mention of Bosley's arrest on outstanding warrants unrelated to this case was brief and that the district court took appropriate action to protect the process by giving a curative instruction. Further, this is not a case based purely on a resolution of the conflicting testimony offered by Bosley and the girlfriend. Rather, the girlfriend's testimony was corroborated by other witnesses as well as by both physical and medical evidence.

In addition, a jury is presumed to follow the instructions it receives from the district court. *State v. Slusser*, 317 Kan. 174, 193, 527 P.3d 565 (2023). The record reveals that the jurors in this case took their role very seriously and exercised discernment in arriving at their verdict. Significantly, although the jury convicted Bosley of most of the charges, it acquitted him of five other charges. This demonstrates that the jurors were able to follow the district court's instructions, to determine the credibility of the witnesses, and to weigh the evidence presented regarding the merits—or lack thereof—as to each offense.

In sum, we find nothing in the record to suggest that the jurors failed to follow the instructions given by the district court or allowed the mention of Bosley's arrest on outstanding warrants unrelated to this case to influence its verdict. Because of the limited nature of the prior acts evidence admitted into evidence, the curative instruction, and the displayed ability of the jury to exercise discernment in reaching its verdict, we find that there is no reasonable probability that the admission of the evidence of Bosley's arrest affected the outcome of the trial. Consequently, we conclude in light of the entire record

that Bosley received a fair trial—albeit not perfect—and that any error on these grounds was harmless.

*Victim's Prior Sexual Conduct*

Bosley also contends that the district court erred in excluding evidence of the girlfriend's prior sexual conduct at trial. He argues that this evidence would have supported his defense that it was someone else who had injured the girlfriend. In response, the State contends that the district court properly excluded the evidence of the girlfriend's prior sexual conduct. In fact, the State argues that it would have been error by the district court had it admitted this evidence at trial.

Under K.S.A. 21-5502(b)—commonly known as the rape shield law—a defendant in a sex crimes prosecution cannot generally introduce evidence of the victim's "previous sexual conduct." Here, Bosley was charged with aggravated criminal sodomy, so the provisions of the rape shield law applied. See K.S.A. 21-5502(a)(5). As such, K.S.A. 21-5502(b) prohibited the admission of evidence of a victim's previous sexual conduct with any person unless the district court first determined the evidence to be relevant and otherwise admissible. Relevant evidence is defined in K.S.A. 60-401(b) as "evidence having any tendency in reason to prove any material fact." *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021). Relevance has two elements: a materiality element and a probative element. 313 Kan. at 237.

Our Supreme Court has found that sexual history evidence may be material if it is relevant to issues "such as the identity of a rapist, consent of the complaining witness, or whether the defendant actually had intercourse with the complaining witness." *State v. Berriozabal*, 291 Kan. 568, 586, 243 P.3d 352 (2010). But by passing the rape shield statute the Kansas Legislature clearly intended that a "victim's prior sexual activity is generally inadmissible since prior sexual activity, even with the accused, does not of

15

itself imply consent to the act complained of." *State v. Stellwagen*, 232 Kan. 744, 747, 659 P.2d 167 (1983). As a result, a district court has the discretion to determine admissibility of such evidence at trial and its "determination of whether evidence of prior sexual conduct will be probative of a material issue will not be overturned on appeal if reasonable minds could disagree as to the court's decision." *Berriozabal*, 291 Kan. at 586.

In this case, Bosley has failed to comply with the statutory procedure set forth in K.S.A. 21-5502(b), which requires:

> "[E]vidence of the complaining witness' previous sexual conduct with any person including the defendant shall not be admissible, and no reference shall be made thereto in any proceeding before the court, except under the following conditions: *The defendant shall make a written motion to the court to admit evidence or testimony concerning the previous sexual conduct of the complaining witness. The motion shall be made at least seven days before the commencement of the proceeding unless that requirement is waived by the court.* The motion shall state the nature of such evidence or testimony and its relevancy and shall be accompanied by an affidavit in which an offer of proof of the previous sexual conduct of the complaining witness is stated." (Emphasis added.)

Any failure to comply with the procedural requirements of the statute precludes admission of the evidence at trial. See *State v. Smith*, 39 Kan. App. 2d 204, 214-15, 178 P.3d 672 (2008); *State v. Clements*, No. 119,306, 2021 WL 1836435, at *9 (Kan. App. 2021) (unpublished opinion) (finding the failure to comply with the procedural requirements of K.S.A. 2020 Supp. 21-5502[b] precludes review); *State v. Peterman*, No. 111,159, 2015 WL 8587505, at *3 (Kan. App. 2015) (unpublished opinion) (the defendant's failure to include an offer of proof with his motion precluded the admission of sexual history evidence). Here, Bosley suggests that his pretrial motion for disclosure of SANE/SART examinations undergone by the girlfriend approximately a month prior to the events that led to the charges in this case substantially complied with the preservation requirements of the statute.

In support of his substantial compliance argument, Bosley points us to *State v. Kemp*, 65 Kan. App. 2d 425, 564 P.3d 827 (2025). In that case, a panel of this court found that a defendant had substantially complied with the statutory requirements governing out-of-state business record certification for unsworn written declarations. 65 Kan. App. 2d at 436. We find the issue presented in the *Kemp* case to be far removed from the issue presented here. As a result, we do not find it to be persuasive in this case.

The purpose of the written notice requirement under K.S.A. 21-5502(b) is to give the State the opportunity to respond and to give the district court the opportunity to make a ruling prior to trial on the admission or exclusion of evidence regarding a victim's prior sexual conduct. In this case, at the final pretrial conference, Bosley proffered that he wanted to introduce evidence of the girlfriend's prior sexual conduct because it would somehow confirm his suspicions that someone else had injured her. However, it is unclear—even on appeal—how the evidence of the SANE/SART examinations would be relevant in this case. Regardless, because Bosley failed to file a written motion as required by K.S.A. 21-5502(b), we conclude that his argument on this issue fails.

*Prosecutorial Error*

Bosley further challenges his convictions based on the grounds of prosecutorial error. We use a two-step process to evaluate claims of prosecutorial error:  error and prejudice. *State v. Mendez*, 319 Kan. 718, 737, 559 P.3d 792 (2024). To determine whether prosecutorial error has occurred, we must decide whether the prosecutor acted outside the wide latitude afforded to conduct the State's case in a manner that does not violate a defendant's constitutional right to a fair trial. If error is found, we then must determine whether the error prejudiced the defendant's due process rights to a fair trial. An error is harmless if the State can demonstrate in light of the entire record that there is no reasonable possibility that the error contributed to the jury's verdict. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

In its brief, the State candidly concedes that there was prosecutorial error in this case but argues that the error was harmless. In particular, the State acknowledges that it was error for the prosecutor to have said during opening statements that "[i]t's been about year now since [the girlfriend has] been outside of [Bosley's] control, and she's able to tell the truth of what happened that week." Likewise, it acknowledges that it was error for the prosecutor to argue during closing arguments that the defense is "going to try and distract you from the truth. And the truth is that between the days of February 14th and 18th, [Bosley] committed each and every single one of these crimes against [the girlfriend]." As a result of the State's concession, we will move directly to considering the second step of the *Sherman* analysis. See *State v. Cherry*, 320 Kan. 784, 791, 571 P.3d 976 (2025).

A review of the record on appeal reveals that most of the prosecutor's statements and arguments focused on the elements of the crimes charged and how the evidence met those elements. It does not appear that the prosecutor focused on the girlfriend's credibility during either the opening statement or closing argument. Instead, the prosecutor believed supported the elements of the crimes.

The analysis of whether prosecutorial error is harmless is fact specific, and a variety of factors may impact our analysis. *Sherman*, 305 Kan. at 110. As a result, we must consider all indicators of prejudice to determine whether the State has met its burden to show no reasonable probability that the error contributed to the jury's verdict. In other words, our focus is on the effect of the prosecutorial error on the verdict. 305 Kan. at 111.

In viewing the record as a whole, we find that this was not a classic "he said, she said" case. Here, the girlfriend's testimony was corroborated by other witnesses who had engaged with her prior to and during the week in question. In addition, the State introduced physical and medical evidence in support of the girlfriend's allegation that

Bosley committed acts of violence against her. Moreover, the district court properly instructed the jury: "Statements, arguments, and remarks of counsel are intended to help you in understanding the evidence, and in applying the law. But they are not evidence. If any statements are made that are not supported by evidence, they should be disregarded." Again, we presume that the jury followed the instructions given by the district court. *State v. Slusser*, 317 Kan. at 193.

Based on our review of the record, we find no likelihood that the isolated comments by the prosecutor impacted the jury's verdict. As discussed above, the jurors in this case demonstrated that they took their duties seriously. Even though fifteen counts were sent to the jurors for deliberation, the jury convicted Bosley of only ten of those counts while acquitting him on the other five. This shows that the jurors did not blindly accept the girlfriend's testimony as true based on the prosecutor's statements or arguments. Instead, the mixed verdict displays that the jurors carefully considered the testimony and weighed the evidence before reaching its own decision regarding whether Bosley was guilty or not guilty of each charge.

Given the totality of the evidence admitted at trial, we conclude that there is no reasonable probability that the prosecutorial error contributed to the verdict. In other words, we conclude that the error did not affect the outcome of the trial in light of the entire record. Hence, we find that the prosecutorial error was harmless.

*Cumulative Error*

Bosley further asserts that his convictions should be reversed based on cumulative error. Considered collectively, cumulative error may sometimes be so great as to require reversal of a defendant's convictions. We must determine based on the totality of the circumstances whether the defendant's right to a fair trial was substantially prejudiced. *State v. Hart*, 297 Kan. 494, 513-14, 301 P.3d 1279 (2013). When deciding if cumulative

errors are harmless, we view them in context of the entire record, considering how the district court dealt with the errors as they arose, the interrelationship between the errors, and the overall strength of the evidence. *State v. Miller*, 308 Kan. 1119, 1176, 427 P.3d 907 (2018).

Here, the admission of evidence of Bosley's arrest on outstanding warrants unrelated to this case and the prosecutorial error must be considered. As discussed above, we have found the error relating to Bosley's prior conduct was minimized—if not eliminated—by the district court's curative instruction. Likewise, we have found the effect of the impact of the prosecutorial error to be harmless based on a review of the record as a whole. Viewing these errors against the entire record, we do not find that they so prejudiced Bosley as to deny his right to a fair trial. Consequently, we conclude that any cumulative effect was insignificant when weighed against the strength of the State's evidence.

*Criminal History Score*

Finally, Bosley contends—for the first time on appeal—that the district court erred by including his prior conviction for criminal threat in his criminal history score. When a defendant argues that there is an error in their criminal history score rendering their sentence illegal, we are presented with a question of law over which our review is unlimited. *State v. Dawson*, 310 Kan. 112, 116, 444 P.3d 914 (2019). However, when a defendant challenges his criminal history for the first time on appeal, "the legal standard for remand is governed by K.S.A. 2022 Supp. 21-6814(d), rather than K.S.A. 2022 Supp. 22-3504(a)." *Steinert*, 317 Kan. 342, 353, 529 P.3d 778 (2023).

Under K.S.A. 21-6814(a), a defendant shall either admit to criminal history in open court or the district court will determine it by a preponderance of the evidence at the sentencing hearing. See *State v. Corby*, 314 Kan. 794, 797, 502 P.3d 111 (2022). A

defendant's admission to criminal history serves as an admission as to both the existence and classification of prior convictions. Consequently, it relieves the State of its burden of presenting additional evidence. 314 Kan. at 797-98.

When a defendant challenges their criminal history after being sentenced—as Bosley has done in this case—the burden of proof shifts to the defendant to prove the criminal history by a preponderance of the evidence. K.S.A. 21-6814(c). *State v. Daniels*, 319 Kan. 340, 348, 554 P.3d 629 (2024). When a defendant challenges the criminal history for the first time on appeal, the defendant "shall have the burden of designating a record that shows prejudicial error" or "the appellate court shall dismiss" the appeal. K.S.A. 21-6814(d). The statutory language also discusses the type of documents that defendants may provide to the appellate court in an attempt to meet their burden of designating a record establishing prejudicial error. K.S.A. 21-6814(d).

Here, it is undisputed that Bosley agreed to his criminal history score at his sentencing hearing. As a result, he bears the burden of designating an adequate record to establish prejudicial error. If Bosley fails to provide such a record, we must dismiss this claim unless we exercise our discretion to remand the case to the district court after a showing that there is a reasonable question regarding whether prejudicial error exists. See K.S.A. 21-6814(d).

Although Bosley has submitted several documents relating to his prior criminal threat conviction, none of them show whether his conviction was for intentional or reckless criminal threat. Likewise, he has not indicated that there are other documents available that would show whether his criminal threat conviction was for intentional or reckless acts. Under these circumstances, we decline to exercise our discretion to remand this issue to the district court.

Affirmed in part and dismissed in part.

21