NOT DESIGNATED FOR PUBLICATION

No. 128,284

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

NICHOLAS THOMAS FULLER
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GERALD R. KUCKELMAN, judge. Oral argument held February 10, 2026. Opinion filed May 8, 2026. Reversed and remanded with directions.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., BRUNS and SCHROEDER, JJ.

PER CURIAM: Nicholas Thomas Fuller timely appeals his conviction and sentence for one count of indecent solicitation of a child. On appeal, Fuller raises multiple issues: (1) His due process rights were violated when the district court failed to instruct the jury that it could not convict him based on some of his testimony; (2) he was denied a fair trial when statements made to law enforcement were not suppressed; (3) the State improperly admitted evidence of prior bad acts committed when he was a juvenile; and (4) his criminal history score was improperly calculated. After a thorough review of the record, we find the evidence involving his prior bad acts was improperly admitted. The acts

1

occurred almost 20 years prior when Fuller was a juvenile and should not have been admitted as their probative value, if any, was substantially outweighed by their prejudicial effect. With that resolution, we decline to address the other issues raised. We reverse Fuller's conviction and sentence and remand for a new trial.

FACTUAL AND PROCEDURAL BACKGROUND

Fuller was accused of multiple sex offenses involving a minor child (referred to herein by the pseudonym Doe to protect his identity). Specifically, the State charged Fuller with two counts of aggravated criminal sodomy, one count of attempted criminal sodomy, one count of aggravated indecent liberties against a child, and one count of indecent solicitation of a child. A jury acquitted him of all but one count, finding him guilty only for indecent solicitation of a child.

Doe called 911 on August 20, 2022, and stated he wanted to report a rape. When officers responded, Doe said that he and Fuller were on the couch watching TV, and Fuller started brushing his hand against Doe and tried raping him. Doe additionally claimed Fuller performed oral sex on him and then tried to get Doe to perform oral sex on Fuller. Doe alleged Fuller then got on his chest and ejaculated on Doe's face. Doe stated that Fuller had been molesting him for roughly two years.

Doe had left the house, and Fuller went looking for him in the neighborhood. Fuller found him talking to some officers, and he pulled up nearby and was approached by two officers. One officer told Fuller that Doe had talked to them about what had been going on and asked Fuller what had happened. The officer told Fuller he wanted to hear his side of the story. Ultimately, Fuller stated he was inappropriate with Doe, and Fuller was arrested.

Prior to trial, Fuller moved to suppress his statements to the officers, asserting they were custodial statements made without warnings under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The State argued the encounter was voluntary; therefore, Fuller's statements were admissible. The district court agreed with the State. It found Fuller was not stopped or apprehended; therefore, he was not in custody.

The district court addressed two other evidentiary issues prior to trial. First, the district court ruled the State could admit journal entries of Fuller's 2004 juvenile adjudications for child molestation in the State of Washington. It limited its ruling to allowing the journal entries, which were admitted at trial over Fuller's objection. The district court denied Fuller's pretrial motion to admit evidence of Doe's prior sexual abuse of an adolescent female and allegations of prior sexual abuse by a relative. However, the district court reconsidered its ruling during trial and allowed the evidence to come in.

At trial, Doe alleged a long history of abuse, beginning during a road trip to California two years prior, asserting Fuller had performed oral sex on him in their hotel room. He claimed this occurred with Fuller's wife, A.F., in the same hotel room, in the very next bed.

Doe testified that, on August 20, 2022, Fuller came into his bedroom in the morning, took off his clothes, and performed oral sex on him while A.F. was in the room just across the hall. He and Fuller then went to work together. Doe testified that, when he returned home from work, he "[t]ook a shower, and then sat down on the couch after eating something for dinner." Doe then:

> "[s]tarted watching a TV show. I don't remember exactly what it was. [Fuller] was also on the couch next to me. He started scooting closer, and eventually everything led up to touching.

"After touching for a little while, he went underneath the blanket that I was under, and then started grabbing my penis, skin on skin contact. Eventually he took off the clothes that I was wearing underneath, which was shorts, and performed oral sex. And then got up on my chest, and started touching himself. And then he was trying to make me give him oral sex. That didn't happen. So then he ejaculated on my face. And then had me perform anal sex on him."

Fuller testified in his own defense and provided a substantially differing account. Fuller testified Doe had been living with him for approximately two years at the time of the incident. Fuller had no contact with Doe for about a decade prior because he did not know where Doe was. However, he eventually found Doe at a therapeutic facility called Integris and reestablished a relationship. Doe was at the facility because he was caught molesting a minor female while living with his mother in Oklahoma. Doe claimed he did so because he was traumatized by prior sexual abuse from a relative. Doe was given the option of going into juvenile detention or Integris. His mother opted to have him go to Integris. He was there for approximately two months then went to live with Fuller in Kansas.

In May 2020, Doe moved in with Fuller in Rossville; they later moved to Leavenworth. Fuller described an initial adjustment period but believed Doe was doing well by the end of that summer. He enrolled Doe in school that fall and had Doe continue with therapy. Fuller also established regular medical care for Doe. In therapy, Doe discussed the abuse by a relative and his abuse of minor female. Doe never indicated to any of his therapists that Fuller was abusing him, and his therapists did not see any signs of abuse or express concerns of abuse in the home. Rather, in therapy, Doe described Fuller as a safe person. Doe was also seeing a pediatric nurse practitioner, who testified Doe had never made any allegations of abuse during their many office visits, even though he had been asked on multiple occasions if he felt safe in the home. The record reflects he never reported any abuse to any of the other medical professionals he saw, nor did those medical professionals see or express any concerns of abuse.

During this time, Doe got to know Fuller's parents as well as A.F. and her parents. He never indicated to A.F. or any extended family that he was being abused by Fuller, and no one saw any signs of abuse. Doe never reported any abuse to his coworkers either. One of Doe's and Fuller's coworkers testified he worked with Doe and Fuller and had been working with Doe on August 20, 2022. He testified nothing appeared out of the ordinary. At one point, Fuller left to pick up supplies from another location, and the coworker was alone with Doe, but Doe never alleged any abuse even with Fuller gone. Fuller denied ever abusing Doe.

Relevant to the events of August 20, 2022, Fuller testified that, while Doe was in the shower that evening, he was on the couch in the living room masturbating and watching pornography. As he was doing so, he was hit in the shoulder with a T-shirt, at which point he realized Doe was standing nearby and had thrown his shirt at Fuller. Fuller used the shirt to clean up and placed it in the hamper. Fuller was embarrassed and felt it was inappropriate when Doe caught him masturbating on the couch. Doe went into his bedroom. Fuller went outside to let the dogs out and smoked a cigarette. When Fuller came back inside, Doe was gone. Fuller went out in his vehicle and started looking for Doe and found Doe a few blocks away from his house talking to police officers.

Multiple other witnesses testified in Fuller's defense. Both Fuller's father and A.F.'s father testified that Doe never reported any allegations of abuse. A.F. testified that she never witnessed any abuse. She further testified that, when the family was on vacation in California, she and Fuller always slept in the same bed and she never noticed Fuller get out of bed at night. Similarly, she testified she did not notice Fuller get out of bed on the morning of August 20, 2022, and did not hear or see anything that made her think any abuse was going on in Doe's bedroom.

After the close of evidence, the jury was instructed on all the charges. During deliberations, the jury sent two questions to the district court: "Does masturbation in front

of a child constitute an indecent solicitation recklessly in front of a child?" and "Does masturbation constitute an indecent solicitation as it is reckless?" Both times the district court instructed the jury to refer to the jury instruction for indecent solicitation of a child. The jury ultimately acquitted Fuller of all charges except indecent solicitation of a child.

At sentencing, Fuller objected to the inclusion of his juvenile adjudications from the State of Washington in determining his criminal history. The district court held they could be counted and found Fuller's criminal history score was A. The district court sentenced Fuller to 43 months' imprisonment with lifetime postrelease supervision and lifetime offender registration. Additional facts are set forth as necessary.

ANALYSIS

*The District Court Erred in Admitting Evidence of Fuller's Prior Bad Acts*

Fuller argues the district court erred in admitting the journal entries reflecting his juvenile adjudications from the State of Washington for sex offenses approximately 20 years prior to trial. He asserts they were not relevant and unduly prejudicial. We agree.

> "The admission of evidence involves several legal considerations: determining relevance; identifying and applying legal principles including rules of evidence; and weighing prejudice against probative value. . . . First, we consider whether the evidence is relevant. All relevant evidence is admissible unless it is prohibited by statute, constitutional provision, or judicial precedent. See K.S.A. 60-407(f). [Citation omitted.]" *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021).

Relevance has two elements: a materiality element and a probative element. *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021). "A material fact is one that has some real bearing on the decision in the case. Materiality presents a question of law that

6

appellate courts consider de novo without deferring to the district court judge. [Citation omitted.]" *State v. Alfaro-Valleda*, 314 Kan. 526, 533, 502 P.3d 66 (2022).

Evidence is probative if it tends to prove a material fact. We review the question of whether evidence is probative under an abuse of discretion standard. 314 Kan. at 533. But even if evidence is relevant, a district court has discretion to exclude it where the court finds its probative value is outweighed by its potential for producing undue prejudice. K.S.A. 60-445. "When an appellant questions the district court judge's weighing of probative value and prejudice before us, we review the judge's ruling for abuse of discretion." *Alfaro-Valleda*, 314 Kan. at 535. A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Younger*, 320 Kan. 98, 137-38, 564 P.3d 744 (2025).

In relevant part, K.S.A. 60-455(d) provides: "[I]n a criminal action in which the defendant is accused of a sex offense . . . , evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative." Such evidence can include "both a propensity to engage in certain conduct with a particular class of victims and a lack of mistake or inadvertence in the conduct . . . ." *State v. Boysaw*, 309 Kan. 526, 542, 439 P.3d 909 (2019).

Fuller argues the evidence of his juvenile adjudications was irrelevant because it occurred when he was 16 years old and involved a younger female relative who was 10 at the time. He asserts: "The circumstances are too different. The purported victims are a 10-year-old girl and a 14-year-old boy. The prior conviction then does not suggest a 'particular class of victim.' It is simply different in kind and there is no probative value." He further argues the age of the convictions undermines any probative value. His arguments are persuasive.

7

First, we recognize instruction from our Supreme Court on how the evidence should be analyzed before it is admitted.

> "In evaluating the probative value of evidence of other crimes or civil wrongs, the district court should consider, among other factors: how clearly the prior act was proved; how probative the evidence is of the material fact sought to be proved; how seriously disputed the material fact is; and whether the government can obtain any less prejudicial evidence. In evaluating the possible prejudicial effect of evidence of other crimes or civil wrongs, the district court should consider, among other factors: the likelihood that such evidence will contribute to an improperly based jury verdict; the extent to which such evidence may distract the jury from the central issues of the trial; and how time consuming it will be to prove the prior conduct." *Boysaw*, 309 Kan. at 541.

When we apply this guidance here, we observe the district court, as the gatekeeper of evidence, did not complete its analysis consistent with determining the prejudicial impact of the evidence of what a 16-year-old boy did nearly two decades prior versus the acts of a 34-year-old man who had no similar charges or convictions in the interim. As a matter of common sense, the propensity to commit a crime at 16 is different than at 34. The law recognizes a difference in the capacity of juveniles and the reasons they may commit criminal acts, including: "(1) a lack of maturity and an underdeveloped sense of responsibility; (2) juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure; and (3) the character and personality traits of a juvenile are not as well formed as that of an adult." *State v. Dull*, 302 Kan. 32, 41-42, 351 P.3d 641 (2015) (citing *Roper v. Simmons*, 543 U.S. 551, 569-70, 125 S. Ct. 1183, 161 L. Ed. 2d 1 [2005]). In other words, juvenile adjudications are often the result of an undeveloped brain and the resulting failure to exercise sound judgment and impulse control or properly distinguishing between right and wrong.

"Propensity" is defined as: "A natural tendency to behave in a particular way; esp., the fact that a person is prone to a specific type of bad behavior." Black's Law Dictionary

1472 (12th ed. 2024). In this context, "prone" is defined as "having a natural bent; disposed or inclined (to) [*prone* to error]." Webster's New World College Dictionary 1165 (5th ed. 2018). With these definitions in mind, we are not convinced the decades-old acts of a 16-year-old boy reflect an inclination of a 34-year-old man to commit another crime as Fuller was charged with here. Although the district court did analyze the issue, we believe it did not go far enough when comparing the probative value versus the prejudicial impact of allowing the jury to consider the past acts of a 16-year-old boy with a 10-year-old girl to the alleged acts of a 34-year-old man with a 14-year-old boy. It is also clear from the verdict the jury was not convinced with the majority of Doe's testimony here.

We observe several factors that concern us with the admission of this evidence:

- The age of the conviction—almost 20 years prior to the alleged conduct here;
- Fuller's age at the time of the prior juvenile adjudication versus his age at the time of the alleged conduct here;
- The difference in the gender of the (alleged) victim(s); and
- The difference in the type of conduct alleged or involved.

We recognize the admission of K.S.A. 60-455(d) evidence often presents a close call and requires a great amount of weighing by the district court. But here, given the age of the prior bad acts, differences between the victims and conduct alleged, and the fact Fuller was a juvenile at the time, we are firmly convinced the prejudicial effect of letting the jury see those adjudications far outweighed their probative value. The admission of this kind of evidence is clearly prejudicial to the defendant and must be carefully considered. We realize our Supreme Court has opened the door for this evidence to be admissible where appropriate, but that does not mean it is admissible in all cases. The district court should have more carefully analyzed and considered the vast disparity in the

9

facts and circumstances of the prior acts and the allegations here and declined to admit this evidence. Had it done so, we would be more confident the jury's verdict was based upon its determinations of what Fuller did here, not what happened when he was a 16-year-old boy. But this potential for an improperly based verdict was not duly considered in the district court's admission of the evidence.

Here, the evidence's prejudicial effect far outweighed its probative value and should not have been admitted. We agree with Fuller that the admission of the evidence was an abuse of discretion by the district court, and we are convinced the error was prejudicial. Given the extent of conflicting evidence at trial and the jury's verdict generally reflecting it did not believe the majority of Doe's allegations, the State cannot convince us there was no reasonable probability the erroneous admission of the evidence did not contribute to the jury's verdict in light of the entire record. See *State v. Knapp*, 313 Kan. 824, 827, 490 P.3d 1228 (2021).

Although we decline to address the merits of Fuller's jury question argument, the jury's confusion as to whether Fuller's admission to masturbating on his couch constituted an indecent solicitation further convinces us of the possibility the jury's verdict was not based on Doe's allegations. Rather, we observe the jury may have felt Fuller masturbating on the couch in the living room amounted to criminal conduct because of his prior adjudications. We cannot be certain why the jury reached its verdict or asked such questions in its deliberations, but we must consider whether the error was harmless in light of the entire record. *Knapp*, 313 Kan. at 827. The erroneous admission of propensity evidence creates harm in distracting the jury from the issues at trial or contributing to the jury returning an improperly based verdict. *Boysaw*, 309 Kan. at 541. We cannot rule out either possibility here; thus, it is a relevant circumstance in our consideration of the record as a whole, which further convinces us the error was not harmless.

10

We reverse Fuller's conviction and sentence for indecent solicitation of a child and remand for a new trial. With this conclusion, we decline to address Fuller's claims regarding the district court's response to the jury's mid-deliberation questions, the admission of his statements to law enforcement, and the use of his juvenile adjudications in determining his sentence.

Reversed and remanded with directions.